**Daniel P. Larsen**, OSB: 943645
Email:  dlarsen@buchalter.com
**Christina M. Morgan**, CA SBN: 277877,
*admitted pro hac vice*
Email:  cmorgan@buchalter.com
**Josh H. Escovedo**, CA SBN: 284506
*pro hac vice* admission pending
Email:  jescovedo@buchalter.com
BUCHALTER
805 SW Broadway, Suite 1500
Portland, OR  97205
Telephone: 503.226.1191

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JONATHAN TALLMAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MICHAELA MILLER, an individual,<br><br>Defendant. | Case No.: 2:23-cv-01592-HL<br><br>**OPPOSITION TO DEFENDANT MICHAELA MILLER'S ORS 31.150 SPECIAL MOTION TO STRIKE** |

Plaintiff Jonathan Tallman submits the following Opposition to Defendant Michaela Miller's ORS 31.150 Special Motion to Strike. This Opposition is supported by the Declaration of Jonathan Tallman ("Tallman Decl.") and the supporting exhibits, these points and authorities, and the entire court record.

# TABLE OF CONTENTS

                                                                                                    **Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................3

III.    LEGAL STANDARD ..........................................................................................6

IV.     LEGAL ARGUMENT ..........................................................................................8

        A.      Tallman is not a public figure and therefore not subject to the actual malice
                standard. ................................................................................................................8

        B.      Defendant's legal challenges to Plaintiff's claims lack merit. ............................11

                1.      The fair comment privilege does not protect Miller's statements
                        accusing him of criminal misconduct, as they were false statements of
                        objective fact, made for the purpose of causing Tallman harm. ..............11

                2.      Under *Neumann*, Miller's defamatory statements are not opinions;
                        they are objective statements of fact, or imply objective statements of
                        fact and are therefore actionable. ...........................................................12

                3.      The Supreme Court held the incremental harm doctrine is not
                        compelled by the First Amendment, no federal court has adopted the
                        doctrine, and it therefore has no applicability here. ................................15

                4.      The express language of the anti-SLAPP statute does not authorize
                        the Court to strike a Complaint because of a remedy.................................17

                5.      Plaintiff's other defamation actions do not bar recovery..........................18

        C.      Defendant's Motion must be denied because Plaintiff has presented
                substantial evidence of a prima facie case...........................................................19

                1.      Plaintiff has presented substantial evidence to support a prima facie
                        case of defamation. ...................................................................................19

                        a.      Defendant's statements are about Tallman. ..................................19

                        b.      Defendant's statements are false. .................................................19

                        c.      Defendant's statements are defamatory assertions of objective
                                fact.................................................................................................20

                        d.      Defendant published the statements.............................................20

e.      Defendant has harmed Plaintiff through the publication of the statements. ...................................................................................20

2.      Plaintiff has presented substantial evidence to support a prima facie case of defamation per se. .....................................................................20

3.      Plaintiff has presented substantial evidence to support a prima facie case of false light. ....................................................................................21

D.      Plaintiff's Complaint should not be dismissed under Rule 12(b)(6). ...................22

E.      Defendant proffers inadmissible evidence in support of her Motion. ..................23

F.      Plaintiff is entitled to recover his attorney's fees and costs. ...............................24

V.      CONCLUSION ................................................................................................................25

T2664.0003 BN 79883674v6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aginsky v. Farmers Ins. Exchange*,
    409 F. Supp. 2d 1230 (D. Or. 2005) ................................................................. 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 23

*Associated Press v. Walker*,
    388 U.S. 130 (1967) .......................................................................................... 8

*Bank of Oregon v. Independent News, Inc.*,
    298 Or. 434 (1985) ............................................................................... 9, 11, 12

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 23

*Belli v. Curtis Publ'g Co.*,
    25 Cal. App. 3d 384 (1972) .............................................................................. 9

*Brooks v. Clyne*,
    No. 3:19-cv-02085, 2021 WL 359733 (D. Or. Jan. 31, 2021) ......................... 15

*Bryant v. Recall for Lowell's Future Comm.*,
    286 Or. App. 691, 400 P.3d 980 (2017) ........................................................... 7

*Campos v. Jensen*,
    296 Or. App. 402 (2019) .......................................................................... *passim*

*Crane v. Ariz. Republic*,
    972 F.2d 1511 (9th Cir. 1992) ........................................................................ 16

*Curtis Publ'g Co. v. Butts* ................................................................................... 8

*Dean v. Guard Pub. Co., Inc.*,
    73 Or. App. 656 (1985) .................................................................................. 22

*Forsher v. Bugliosi*,
    26 Cal.3d 803 ........................................................................................... 19, 21

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................................. 9, 10, 11

*Haas v. Painter*,
    62 Or. App. 719 (1983) .................................................................................. 11

T2664.0003 BN 79883674v6

*Hakopian v. Mukasey,*
 551 F.3d 843 (9th Cir. 2008) ........................................................................18

*Handy v. Lane Cnty.,*
 360 Or. 605, 385 P.3d 1016 (2016).................................................................7

*Herrera v. C&M Victor Co.,*
 265 Or. App. 689 (2014) ........................................................................20, 21

*Marr v. Putnam,*
 196 Or. 1 (1952)............................................................................................12

*Masson v. New Yorker Magazine, Inc.,*
 895 F.2d 1535 (9th Cir. 1989) ...............................................................15, 16

*Masson v. New Yorker Magazine, Inc.,*
 960 F.2d 896 (9th Cir. 1992) ........................................................................15

*Milkovich v. Lorain Journal Co.,*
 497 U.S. 1 (1990).....................................................................................11, 12

*Miller v. Sawant,*
 18 F.4th 328 (9th Cir. 2021) .........................................................................19

*Montandon v. Triangle Publ'g, Inc.,*
 45 Cal. App. 3d 938 (1975) ............................................................................9

*Mouktabis v. Clackamas Cnty.,*
 327 Or. App. 763 (2023) .................................................................................7

*Neumann v. Liles,*
 358 Or. 706, 369 P.3d 1117 (2016)...................................................... *passim*

*New York Times Co. v. Sullivan,*
 376 U.S. 254 (1964) ................................................................................8, 10

*NV Transport, Inc. v. V&Y Horizon, Inc.,*
 302 Or. App. 707 (2020) ...............................................................................20

*Obsidian Fin. Grp., LLC v. Cox,*
 No. CV-11-57-HZ, 2011 WL 5999334 (D. Or. Nov. 30, 2011)...........................10

*Oregon Natural Desert Ass'n v. Bushue,*
 644 F. Supp. 3d 813 (D. Or. 2022).................................................................18

*Peck v. Coos Bay Times Pub. Co.,*
 122 Or. 408 (1927).........................................................................................12

T2664.0003 BN 79883674v6

*Plotkin v. State Accident Ins. Fund*,
    280 Or. App. 812, 385 P.3d 1167 (2016) .............................................................7

*Reynoso v. Fidelity Nat'l Title Ins. Co.*,
    No. 03:13-cv-01600-HZ, 2013 WL 6919666 (D. Or. Dec. 31, 2013) ...................18

*Rinallo v. Capsa Solutions, LLC*,
    222 F.Supp.3d 927 (D. Or. 2016).........................................................................23

*Ringler Assocs. Inc. v. Maryland Cas. Co.*,
    80 Cal. App. 4th 1165 (2000) .............................................................................21

*Ruble v. Kirkwood*,
    125 Or. 316 (1928).............................................................................................21

*Staten v. Steel*,
    222 Or. App. 17 (2008) ........................................................................................9

*Todd v. Lovecruft*,
    No. 19-cv-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ......................15

*Wahab v. Wahab*,
    No. 3:23-cv-00098-SB, 2023 WL 5035662 (D. Or. Aug. 8, 2023) ............. 8, 14, 15

*Wheeler v. Green*,
    286 Or. 99 (1979)..........................................................................................9, 11

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ...............................................................................17

*Wingard v. Or. Family Council, Inc.*,
    290 Or. App. 518, 417 P.3d 545 (2018) .................................................................6

*Zweizig v. Nw. Direct Teleservices, Inc.*,
    No. 3:15-cv-02401-HZ, 2016 WL 5402935 (D. Or. Sept. 24, 2016)................7, 16

**Statutes**

OR. REV. STAT. § 31.150......................................................................................6, 17

OR. REV. STAT. § 31.150(2) .......................................................................................6

OR. REV. STAT. § 31.150(2)(c)–(d) ...........................................................................6

OR. REV. STAT. § 31.150(3) .......................................................................................7

OR. REV. STAT. § 31.150(4) .......................................................................................7

OR. REV. STAT. § 163.415.........................................................................................12

v

ORS 31.150 ..................................................................................................................23

**Other Authorities**

BLACK'S LAW DICTIONARY, *frivolous* (11th ed. 2019) .............................................24

Fed. R. Evid. 402 .........................................................................................................24

Fed. R. Evid. 701 ...................................................................................................23, 24

Fed. R. Evid. 802 ...................................................................................................23, 24

Restatement (Second) of Torts, § 652E, cmt. c ...........................................................22

Rule 11 ...........................................................................................................................2

Rule 12(b)(6) .......................................................................................... 8, 17, 22, 23

Rule 56 ...................................................................................................................8, 17

## POINTS AND AUTHORITIES

## I.    INTRODUCTION

Lawmakers created anti-SLAPP statutes as a shield for the disadvantaged to protect themselves from those who would chill their constitutional right to expression through litigation. Lawmakers did not create the statutes to be weaponized to further destructive and defamatory ends. Defendant Michaela Miller seeks to do exactly that. Miller employs misrepresentation, misdirection, and aspersions to use the anti-SLAPP statutes as a sword in her campaign to destroy a small business owner's reputation and livelihood.

Miller—a disgruntled former employee who the police previously reprimanded for destroying Plaintiff Jonathan Tallman's property—filed an anti-SLAPP motion to shield herself from liability arising from her defamatory statements about Tallman. In doing so, she disjointedly raises several arguments. Each of the arguments—and the Motion as a whole—fails.

As a threshold matter, Miller seeks to heighten the standard Tallman must satisfy by misrepresenting to the Court that Tallman has admitted to being a public figure. He has not. Tallman has, however, admitted to previously running for public office. But his prior candidacy does not render him a public figure in perpetuity, and it certainly does not make him a public figure for purposes of this Motion. Tallman is a private figure.

Miller conflates multiple arguments into one section, arguing that her statements are not actionable because they are true, protected by the First Amendment, not defamatory, or not about Tallman. For purposes of this Motion, the arguments must be analyzed independently.

As to Miller's truth argument, there is no substance. Miller argues in passing that her statements are not defamatory because they are true. Yet while the truth is an absolute defense to defamation, Miller has not submitted sufficient evidence to support this position, and she cannot do so on reply. By contrast, Tallman submits his own declaration denying all of Miller's lies, proof that the police department investigated the matter and opted to do nothing, and evidence that SafeSport investigated the matter, determined the allegations were baseless, and authorized

1

Tallman to coach children again. As it stands, Tallman's evidence outweighs Miller's. That is especially true when the evidence is construed in Tallman's favor as this Motion requires.

Miller's First Amendment argument likewise fails. Miller contends her statements—viewed individually or as a whole—are not actionable because they are her personal viewpoints. This argument is smoke and mirrors. Miller reposted the police report about Tallman and said she hopes "her story" will "make a difference in the protection of the children in Boardman" and will "protect [the] city and its children from [Tallman][.]" In the same post, she states that Tallman used "sexual and controlling behaviors" toward her and expressed concern for "where it could have gone." She even admits her goal was that "the city will start to see this man as a Predator." Those aren't viewpoints. They are objective statements of facts, capable of being proven true or false. They are therefore actionable.

Miller claims her statements are not defamatory, yet she fails to explain how that is true aside from parsing benign sentences from her defamatory post and stating the obvious. But it is irrefutable that, if false, accusing an adult man of grooming and engaging in sexually motivated behavior toward a minor and being a predator is defamatory.

It is unclear how Miller can claim in good faith that her statements are not about Tallman. Her defamatory statements were featured on a social-media post where she reposted the police report about her claimed interactions with Tallman, and she claims he is a predator from whom the city and its children must be protected. These statements cannot be construed to be about anyone else. In fact, this argument warrants Rule 11 sanctions, but it is important to stay focused on this Motion.

In addition, Miller argues that her statements are protected by the fair comment privilege. Yet her argument ignores the crux of the affirmative defense. The statements can only be protected if they relate to a "matter of public concern," were based on "true or privileged facts," "represent[ ] the actual opinion of the speaker," and were not made "solely for the purpose of causing harm." Miller can only establish that the subject matter is of public concern. She cannot establish that the statements were true, that they were her opinion, or that they were not made for

the purpose of causing Tallman harm. To the contrary, Tallman has shown substantial evidence that the statements were false and defamatory, that they were objective facts, not opinion, and that they were made to harm Tallman. As to the latter, Miller admitted her goal is to cause harm and cause the entire city to see Tallman as a "[p]redator." Accordingly, the fair comment privilege defense fails.

The remainder of Miller's arguments are tenuous. Although they are addressed below, they do not warrant comment in this introduction.

The Motion is heavy on case law and light on analysis. The Court must be cautious and not allow Miller to obscure the real issues through this maneuver. This Court's decision could have widespread implications. By granting the Motion, the Court would confirm that the anti-SLAPP statute is a sword for individuals who engage in defamation to strike down the attempts of the defamed to procure justice. Conversely, by denying the Motion, the Court would affirm that while the anti-SLAPP statute is intended to protect the constitutional rights of defendants from frivolous claims brought to chill speech, a balance must be stricken to avoid denying justice and due process to the truly wronged. Simply put, the Court must deny this Motion.

## II.    FACTUAL BACKGROUND

Plaintiff Jonathan Tallman lives in a small city along the Columbia River, known as Boardman, Oregon. Tallman Decl., ¶ 3. In Boardman, there is no anonymity. Everyone knows each other, and reputations matter. Compl., ¶ 4.

Tallman is a devoted member of the Boardman community. He has ran for local office four times in the past three years. Tallman Decl., ¶¶ 4-7. The most recent election occurred in May 2023. Tallman Decl., ¶ 7. Tallman did not prevail in any of the elections. He has never held public office. Tallman Decl., ¶ 8.

Instead, Tallman serves his community by operating a local coffee shop called The Farmer's Cup. Much of his business comes from the Boardman community. Compl., ¶ 5; Tallman Decl., ¶ 9. The Farmer's Cup opened in March 2019. His first employee was Defendant Michaela Miller. Tallman Decl., ¶ 10. Miller was not a model employee. She routinely failed to

dress or behave in a manner appropriate for work. She was frequently reprimanded for failing to perform her job duties and for dressing in an unprofessional manner. Tallman Decl., ¶ 11.

On or about August 21, 2019, an individual from Miller's school contacted the Boardman Police Department and accused Tallman of harassing Miller and another female employee. Tallman Decl., ¶ 12. The police investigated and prepared a report (the "Police Report"). Tallman Decl., ¶ 13, Ex. A. In the Police Report, two female employees accused Tallman of making inappropriate sexual comments to them; placing name tag stickers on their chests; slapping their buttocks; rubbing their shoulders; putting ice down their shirts; asking about their sex lives; and touching them inappropriately when helping them down from the rafters. Tallman Decl., ¶ 14. After completing their investigation, the police declined to press any charges against Tallman. Tallman Decl., ¶ 15. Likewise, Tallman has not been convicted of any crime in connection with the allegations made in the Police Report. Tallman Decl., ¶ 16.

After the investigation concluded, and Miller's employment terminated, Miller continued to disrupt Tallman's life. For example, in September 2020, Miller was caught stealing Tallman's mayoral campaign signs. Tallman Decl., ¶¶ 10, 17. Rather than be vindictive, Tallman generously dropped the charges against her. Tallman Decl., ¶ 17.

Other members of the community also refuse to let this matter pass. One such individual, Frankie Nunez Lezamo, publicly posted an excerpt from the Police Report to Facebook. Tallman Decl., ¶¶ 18-19, Ex. B. Miller shared Nunez Lezamo's post, including the Police Report, along with the following caption:

> I hope my story will be used to make a difference in the protection of the children in Boardman
>
> here's the truth
>
> I was 16 when this police report was made
> To young to understand that What i was experiencing was building blocks to an agenda
> To young to know where to set boundaries and when to speak up

For the past 4 years I watched from behind the screen as a vague description of my story has been told on social media, Used to protect our city and its children from a man who I once considered a family friend,
Someone who used to play catch with me in his parents back yard, give me a ride to practice, teach me how to drive, come to my sports games, drop off strawberry lemonade at my house, and so much more
, But what was a 40 year old man doing creating a fun loving space for a 13-16 year old girl
Something I wish I would have asked myself sooner
gratefully I was lucky enough to have been surrounded by friends and coaches who started to pick up on the sexual and controlling behaviors this man was using towards me, where it could have gone I don't even want to try to imagine

As an adult now I look back more on my situation and it breaks my heart I was to naive to realize what was going on, there was a lot of stuff that I was to embarrassed to say to the police and I wish I could go back protect my self and my friends, unfortunately I can't
But my story can make make [*sic*] a difference in protecting the children now

This is not the first time this man has tried to receive a position where he would be given the opportunity to work one on one with kids, given the opportunity to create a "fun and loving" environment for them,
I am also not the only one with a story already, and unfortunately I wasn't the last.

Publicly announcing this is one of the most terrifying things I have ever posted.
Putting myself in a position to be called names, accused of being a liar, and for my name to be talked amongst the people of Boardman

But it is my goal that the city will start to see this man as a Predator
And use my story to protect others

Thank you Nunez family and so many other family's who have been my supporters through
this journey, I would not have had the confidence to speak up if it wasn't for you

Compl., ¶ 8; Tallman Decl., ¶ 20, Ex. C.

Miller's allegations—both in her Facebook post and as memorialized in the Police Report—are false. Tallman Decl., ¶¶ 22-34. Nonetheless, because of the "allegations, rumors, and information posted online," the Columbia Youth Soccer Club reported Tallman to the U.S. Center for SafeSport. As a result, the U.S. Center for SafeSport investigated Tallman and suspended him from participating in the Oregon Youth Soccer Association and its affiliated member clubs. Compl., ¶¶ 12-13; Tallman Decl., ¶¶ 35-37, Exs. D, E. Tallman has also seen a

decrease in local business at The Farmer's Cup, and he had a contractor refuse to continue doing business with him. Compl., ¶¶ 14-15; Tallman Decl., ¶¶ 38, 40-42. Moreover, Harvest Hosts—a membership program that allows RV travelers to camp overnight at unique locations around the country—will no longer allow Tallman to host travelers, which has reduced his income by several thousand dollars per month. Tallman Decl., ¶ 39, Ex. F.

Despite Miller's defamatory statements, SafeSport ultimately determined the claims against Tallman were baseless. Accordingly, SafeSport has authorized Tallman to return to coaching children in the community next season. Along with the police department's investigation, which resulted in no charges against Tallman, this marks the second inquiry that resulted in no action being taken against the accused.

All in all, Defendant's defamatory statements have significantly damaged Tallman and Defendant has refused his requests to retract her statements. Accordingly, Tallman filed this action seeking justice, and the Court should not dismiss it because of Defendant's Motion.

## III.   LEGAL STANDARD

Oregon's anti-SLAPP statute, OR. REV. STAT. § 31.150, "creates an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage." *Neumann v. Liles*, 358 Or. 706, 723, 369 P.3d 1117 (2016). Application of Oregon's anti-SLAPP statute is a "two-step burden-shifting process." *Wingard v. Or. Family Council, Inc.*, 290 Or. App. 518, 521, 417 P.3d 545 (2018). The moving defendant must first demonstrate that "'the claim against which the motion is made arises out of' statements or conduct protected by" OR. REV. STAT. § 31.150(2). *Id.* at 521–22. The statute protects, in relevant part, "[a]ny . . . written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest" and "[a]ny other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest." OR. REV. STAT. § 31.150(2)(c)–(d).

If the defendant meets her burden, the plaintiff must "establish that there is a probability that [he] will prevail on the claim by presenting substantial evidence to support a prima facie

case." *Id.* § 31.150(3). Substantial evidence means enough evidence from which a reasonable trier of fact could find that the plaintiff has met his burden of production. *See Handy v. Lane Cnty.*, 360 Or. 605, 623, 385 P.3d 1016 (2016) ("In using terms like 'probability' and 'substantial evidence,' the legislature did not intend to require a plaintiff to do more than meet its burden of production."); *see also Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 775 (2023) ("[T]he statutory text indicates that the presentation of substantial evidence to support a prima facie case is, in and of itself, sufficient to establish a probability that the plaintiff will prevail; whether or not it is 'likely' that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3). . . . When considering whether a plaintiff has presented substantial evidence to support a prima facie case, we do not weigh the defendant's evidence against the plaintiff's; instead, 'under the second step of the burden-shifting analysis the court may consider defendant's evidence only insofar as necessary to determine whether it defeats plaintiff's claim as a matter of law.").

The second step of the analysis is typically not constrained to the pleadings. *See Bryant v. Recall for Lowell's Future Comm.*, 286 Or. App. 691, 693, 400 P.3d 980 (2017) (considering "facts as provided in the pleadings and the supporting and opposing declarations and exhibits submitted"); *see also* OR. REV. STAT. § 31.150(4) ("[T]he court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."). When presented with conflicting evidence, courts "adopt the version most favorable to plaintiff, so long as it is supported by substantial evidence." *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 816, 385 P.3d 1167 (2016) (citation omitted); *see also Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2016 WL 5402935, at *2 (D. Or. Sept. 24, 2016) ("In making this determination, the Court must take the facts from the pleadings and from the supporting and opposing affidavits, O.R.S. 31.150(4), and state them 'in the light most favorable to plaintiffs.'"). Courts consider a defendant's opposing evidence "only to determine if it defeats plaintiff's showing as a matter of law." *Bryant*, 286 Or. App. at 693 (quoting *Plotkin*, 280 Or. App. at 816).

When a defendant's motion challenges the factual sufficiency of a plaintiff's claims, the "court should apply the Rule 56 standard and 'discovery <u>must</u> be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.'"[1] *Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 WL 5035662, at *4 (D. Or. Aug. 8, 2023) (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (emphasis added)).

In contrast, when a defendant's motion is based on "purely legal questions, such as whether Defendant's statements are protected under the First Amendment or [are] potentially false and defamatory and thus actionable[,]" the court should not consider extrinsic evidence and should instead apply a Rule 12(b)(6) standard with all well-pleaded facts assumed to be true. *Wahab*, 2023 WL 5035662, at *6.

Tallman concedes that Miller has met her initial burden. Accordingly, Tallman only addresses the second prong of the anti-SLAPP test below.

## IV.  LEGAL ARGUMENT

### A.  Tallman is not a public figure and therefore not subject to the actual malice standard.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964), the United States Supreme Court held that a constitutional privilege applies to defendants sued by public officials for defamation that requires the public official to prove that the statements were made with "actual malice." "Actual malice" means knowledge of the statement's falsity or reckless disregard for its truth. *Id*. at 280. The Supreme Court later extended the constitutional privilege to public figures in *Curtis Publ'g Co. v. Butts* and *Associated Press v. Walker*, 388 U.S. 130, 155 (1967).

---

[1] To the extent Defendant challenges the factual sufficiency of Tallman's claims, the Court must allow Tallman to conduct discovery before it issues a ruling. Of course, if the Court finds Tallman has carried his burden even without the benefit of discovery, it can deny the Motion now.

T2664.0003 BN 79883674v6

A party can become a public figure two ways. First, an individual may obtain such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Examples of all-purpose public figures include nationally well-known figures and celebrities. *See Belli v. Curtis Publ'g Co.*, 25 Cal. App. 3d 384, 388 (1972); *Montandon v. Triangle Publ'g, Inc.*, 45 Cal. App. 3d 938, 946 (1975). "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed [an all-purpose public figure]." *Gertz*, 418 U.S. at 352.

Second, an individual can voluntarily inject himself into a public controversy and thereby become a public figure for a limited range of issues. *Id*. at 351; *Staten v. Steel*, 222 Or. App. 17, 53 (2008) (Edmonds, P.J., concurring) (discussing the Oregon Supreme Court's definition of a limited-purpose public figure and its requirement that an individual must attempt to influence a controversy before the defamatory statements are made). This type of public figure is known as a "limited purpose" public figure, and unlike the all-purpose public figure, loses certain protection for his or her reputation only to the extent that the defamatory controversy relates to his or her role in a public controversy. *See Wheeler v. Green*, 286 Or. 99, 114, 116–17 (1979). One does not become a public figure—for all purposes or limited purposes—"simply because of general public interest in one's lifestyle and personal activities[.]" *Id*. at 116. It does not matter that an individual is known to a particular portion of the public relevant to the statements in question. *Id*.

For the avoidance of doubt, "the public controversy into which [the] plaintiff may thrust his or her personality must pre-exist the defamatory publication." *Bank of Oregon v. Independent News, Inc.*, 298 Or. 434, 443 (1985) (citing *Hutchinson v. Proxmire*, 433 U.S. 111, 135 (1979)). The publication cannot create the controversy. *Bank of Oregon*, 298 Or. at 443 (citing *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167–68 (1979)). Moreover, the Supreme Court has held that just because events involving a private individual attract public and media attention, it does not transform a private individual into a public figure of any kind. *Bank of Oregon*, 298 Or. at 443 (citing *Wolston*, 443 U.S. at 167). "Public figure status may not be manufactured this

9

way." *Obsidian Fin. Grp., LLC v. Cox*, No. CV-11-57-HZ, 2011 WL 5999334, at *4 (D. Or. Nov. 30, 2011).

In *Gertz*, the leading case on limited-purpose public figures, the Supreme Court held that a prominent attorney who had been hired by a family of a murder victim to pursue a civil action against the police officer convicted of the murder was not a limited-purpose public figure. 418 U.S. at 351–52. The Supreme Court reached this conclusion despite the murder and the officer's conviction being matters of public concern because the attorney had not thrust himself into the "vortex of the public issue," and he did not "engage the public's attention in an attempt to influence its outcome." *Id*. at 352.

Under the applicable standards, Tallman is neither an all-purpose public figure nor a limited-purpose public figure. Miller scantily argues that Tallman is a public figure because he is a "prominent member of the Boardman community [who] earned that prominence by thrusting himself into community discussions by running for political office." Mot. at 28. But Miller fails to analyze the facts under the relevant authorities.

Tallman has not achieved such pervasive fame or notoriety to warrant becoming a public figure for all purposes and in all contexts. There is no evidence before the Court to support such a conclusion. Tallman is a small business owner in a town of approximately 4,000 people. If he is an all-purpose public figure, then so is every other person in the United States, and everyone is entitled to the constitutional privilege created in *New York Times v. Sullivan*. That simply cannot be true.

Moreover, Tallman is not a limited-purpose public figure for purposes of this case because he did not inject himself into a public controversy. It is insufficient that the Boardman community is interested in his personal activities. The limited-purpose public figure threshold is higher. If the Plaintiff in the *Gertz* case was not a limited-purpose public figure, then Tallman is not either.

While Miller summarily argues that Tallman is a public figure because he "injected himself into community discussions by running for political office," that argument reflects a

10

misunderstanding of the law. It is insufficient that a plaintiff injected himself into community discussions at some point in time by running for political office. The case law in *Gertz*, *Wheeler*, and *Bank of Oregon* show that there must be a nexus between the discussion that the plaintiff thrust himself into and the subject matter at issue in the defamatory statements. Here, even if we assume previously running for public office constitutes injecting oneself into public controversy, there is no connection between Tallman's previous political candidacy and the statements at issue in this case. Miller erred in her conclusion.

Even if the publication of the defamatory statements were considered a "public controversy" and Tallman had injected himself into the controversy after the statements were posted, he still would not be a limited-purpose public figure. Under *Bank of Oregon*, the controversy must preexist the defamatory statements. For that reason, the publication of the defamatory statements cannot create the controversy into which the plaintiff injects himself.

Miller's failure to thoroughly analyze the issue and explain to the Court (and Tallman) how Tallman is a public figure is dispositive. But if the Court analyzes the issue, the conclusion is clear. Tallman is not a public figure.

**B.    Defendant's legal challenges to Plaintiff's claims lack merit.**

1.    <u>The fair comment privilege does not protect Miller's statements accusing him of criminal misconduct, as they were false statements of objective fact, made for the purpose of causing Tallman harm.</u>

Under the fair comment privilege, a statement is protected if "it concerned a matter of public concern, was upon true or privileged facts, represented the actual opinion of the speaker, and was not made solely for the purpose of causing harm." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13–14 (1990); *see also Haas v. Painter*, 62 Or. App. 719, 724 (1983) (recognizing the fair comment doctrine only applies to opinions). The fair comment privilege thus served to "strike the appropriate balance between the need for vigorous public discourse and the need to redress injury to citizens wrought by invidious or irresponsible speech." *Milkovich*, 497 U.S. at 14.  According to the Oregon Supreme Court, the privilege ends where defamation begins, and

the truth is the only defense relative to a charge of commission of a crime. *Peck v. Coos Bay Times Pub. Co.*, 122 Or. 408, 422 (1927) (finding the fair comment privilege inapplicable where the statements in question concerned the plaintiff having committed a crime); *see also Bank of Oregon*, 298 Or. at 437–38 (recognizing that *Peck* held the fair comment privilege does not apply to statements that plaintiff committed a crime); *see also Marr v. Putnam*, 196 Or. 1, 30–35 (1952) (holding assertions of misconduct not acknowledged or proved to have occurred are not privileged).

Under *Peck*, *Bank of Oregon*, and *Marr*, Miller's fair-comment defense fails at the onset. Miller accuses Tallman of committing a crime under Oregon law through her defamatory statements. *See* O.R.S. § 163.415 (defining sexual abuse in the third degree to include subjecting another person to sexual contact if there is a lack of consent or the victim is incapable of consent by reason of being under 18 years old). Accordingly, her statements are not privileged and the defense lacks merit.

But if the Court walks through the full *Milkovich* analysis, it would reach the same conclusion. While the published statements are a matter of public concern, they are untrue; they are statements of objective fact, not opinion; and they are made solely for the purpose of causing harm, as Miller admits. Each of these grounds would independently preclude a fair-comment defense. If the Court does not find the fair-comment defense inappropriate on all three grounds, it must do so on at least one.

2.  Under *Neumann*, Miller's defamatory statements are not opinions; they are objective statements of fact, or imply objective statements of fact and are therefore actionable.

"[T]o determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern." *Neumann*, 358 Or. at 718. "If it does, then the dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id.* at 718–19. To answer that question, the statements at issue must be examined under a three-part test: "(1) whether the

general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Id.* at 719. Under this framework, the defendant's words are not considered in isolation but rather courts "must consider 'the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside the protection of the First Amendment.'" *Id.* (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)).

Ms. Miller relies on *Campos v. Jensen*, 296 Or. App. 402 (2019), to support her argument that, when individually analyzed, her statements are entitled to First Amendment protection. In that case, the defendant's friend accused the plaintiff of sexual misconduct and the defendant posted three online statements—two on Facebook and one on a newspaper website—in support of her friend while also suggesting that the plaintiff engaged in the alleged misconduct. *Campos*, 296 Or. App. at 403–05. The *Campos* court applied the framework set forth in *Neumann* and found that, when viewing each statement as a whole in context, the defendant was describing her personal opinion on her friend's character and credibility and therefore, each statement is protected by the First Amendment. *Id*. at 408, 414–15.

Miller contends that the *Campos* court analyzed the statements at issue on an individual level, but that is incorrect. The defendant in *Campos* posted three separate online statements, each of which was a paragraph containing multiple sentences and phrases. While the *Campos* court analyzed each paragraph separately from the other two, it did not review each paragraph line-by-line as Miller does with her own Facebook post. *See Campos*, 296 Or. App. at 411 ("[N]othing in our analysis suggests that individual sentences contained in a paragraph or larger statement must be analyzed independently from the other sentences contained in the paragraph or larger statement. Indeed, *Neumann* explicitly instructs to the contrary that sentences contained in a larger statement must be evaluated in view of the whole.").

13

In applying the framework set forth in *Neumann* and *Campos*—something Miller failed to do in her motion—Miller's Facebook post as a whole is not entitled to First Amendment protection. First, the general tenor of Miller's statement does not negate the impression that she was asserting an objective fact. Unlike the defendant in *Campos*, Miller recounts her alleged personal experience with Tallman, rather than her opinion based on a third party's recounting of events. Further, courts evaluating statements similar to those published by Defendant have concluded that the general tenor of the publication did not negate the impression that the defendant was asserting objective facts.

For example, in *Wahab*, the plaintiff brought a defamation claim against his niece after she sent a message in a family group chat accusing him of sexually abusing her for months when she was a child. 2023 WL 5035662, at *1–2. In response, the self-proclaimed victim filed an anti-SLAPP motion. *Id.* at *2. The motion was denied, because plaintiff had alleged a plausible and actionable defamation claim.

The defendant claimed she sent the message because she felt the recipients' children needed protection. *Id.* She felt obligated to warn the recipients that their children were not safe around the plaintiff. *Id.*

When determining whether the statements were defamatory, the court applied the three-part test enunciated in *Neumann*. The court concluded that the general tenor of the message did not meaningfully negate the impression that defendant was asserting an objective fact. *Id.* at *10.

Here, as in *Wahab*, the tenor of Miller's statements does not negate the impression that she was asserting an objective fact. To the contrary, Miller's statements suggest that Plaintiff is a serious threat to children. Specifically, she wrote that she hoped her story "will be used to make a difference in the protection of the children in Boardman," that her story had already been "[u]sed to protect [the] city and its children" from Tallman, that her story can make "a difference in protecting the children now," and that her goal is for the city to "use [her] story to protect others." Compl., ¶ 8; Tallman Decl., ¶ 20, Ex. C.

14

Second, Ms. Miller does not use figurative or hyperbolic language in her post. *Compare Campos*, 296 Or. App. at 411–12 (finding the following statements were "all hyperbolic statements of defendant's personal opinion": (1) "we know this man is 100% guilty," (2) the plaintiff "needs to pay the price," and (3) that the defendant's friend is "one of the best people I know"). To the contrary, as stated above, her "statements suggested that she was seriously maintaining that [p]laintiff had in fact committed a specific crime, and therefore posed a threat to children." *Wahab*, 2023 WL 5035662, at *11; *see* Compl., ¶ 8; Tallman Decl., ¶ 20, Ex. C.

Last, whether Tallman is a "predator" who engaged in "sexual and controlling behavior" toward minors is capable of being proven true or false. Indeed, other courts have concluded that statements of sexual misconduct can be proven true or false. *See Wahab*, 2023 WL 5035662, at *11; *see also Brooks v. Clyne*, No. 3:19-cv-02085, 2021 WL 359733 (D. Or. Jan. 31, 2021); *Todd v. Lovecruft*, No. 19-cv-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020). Accordingly, a reasonable factfinder would conclude that Miller's statement implies a false assertion of objective fact and thus is not entitled to First Amendment protection.

3.  The Supreme Court held the incremental harm doctrine is not compelled by the First Amendment, no federal court has adopted the doctrine, and it therefore has no applicability here.

In *Masson v. New Yorker Magazine, Inc.*, the United States Supreme Court held that the incremental harm doctrine is not grounded in the First Amendment. 501 U.S. 496, 523 (1991). The Court recognized that the Ninth Circuit had not indicated in the decision below whether it considered the incremental harm doctrine to be grounded in California law, but that the state is free is accept the doctrine if it chooses. *Id.* On remand, the Ninth Circuit analyzed whether the doctrine exists under California law. *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 898 (9th Cir. 1992). In doing so, Judge Kozinski concluded that California courts have shown no interest in the incremental harm doctrine, with only one reference to the doctrine in reported California cases at the time. *Id.* Judge Kozinski eventually determined that the incremental harm doctrine is not an element of California libel law. *Id.* To date, the incremental harm doctrine has

15

never been adopted by any federal appellate court. *Masson v. New Yorker Magazine, Inc.*, 895 F.2d 1535, 1566 (9th Cir. 1989) (Kozinski, C.J., dissenting) (also recognizing that the doctrine was considered and expressly and convincingly rejected by the D.C. Circuit when then-Judge Scalia concluded it was simply a "bad idea"); *see also Crane v. Ariz. Republic*, 972 F.2d 1511, 1524 (9th Cir. 1992) (refusing to adopt the incremental harm doctrine).

Prior to *Masson* reaching the Supreme Court, Judge Kozinski dissented from Judge Alarcon's opinion for the Ninth Circuit. In doing so, he recognized that the doctrine is not grounded in the First Amendment and that California had not adopted the doctrine. *Masson*, 895 F.2d at 1565 (Kozinski, C.J., dissenting). But more importantly, Judge Kozinski concluded that California leans in the opposite direction. *Id.* In reaching this conclusion, Judge Kozinski recognized that "[i]n order to determine whether a statement is one of fact, which is actionable, or opinion, which is not, '[t]he publication in question must be considered in its entirety; it may not be divided into segments and each portion treated as a separate unit.'" *Id.* (quoting *Baker v. Los Angeles Herald Examiner*, 42 Cal. 3d 254, 260 (1986)). Accordingly, he concluded, the application of the incremental harm doctrine would conflict with California law. *Id.*

Oregon has never adopted the incremental harm doctrine. The doctrine has never even been mentioned in an Oregon opinion—published or unpublished. However, Oregon law is consistent with California law in that it requires the publication in question to be considered in its entirety instead of in segments. *See Neumann*, 358 Or. at 719 (quoting *Partington*, 56 F.3d at 1153); *Campos*, 296 Or. App. at 411. Accordingly, as in California, the application of the doctrine would be inconsistent with state law. *See Zweizig*, 2016 WL 5402935, at *2 (quoting *Page v. Parsons*, 249 Or. App. 445, 461 (2012) (California case law informs Oregon courts regarding application of anti-SLAPP law)).

Miller cites no authority for the application of the incremental harm doctrine. That isn't surprising since Oregon has not adopted the doctrine, the Ninth Circuit has refused to adopt it while recognizing that it is a "bad idea" and that its application would be inconsistent with state

law that requires publications to be analyzed in the aggregate, and the Supreme Court has held the doctrine is not grounded in the First Amendment.

Even if the Court considers applying the incremental harm doctrine, it would quickly conclude its application is at odds with *Neumann*'s requirement that defamatory publications be analyzed as a whole, not parsed. The incremental harm doctrine would therefore conflict with Oregon Supreme Court precedent on defamation. That surely cannot be the right outcome. Because the doctrine does not apply, Tallman will not address the specifics of Miller's meritless arguments.

 4. <u>The express language of the anti-SLAPP statute does not authorize the Court to strike a Complaint because of a remedy.</u>

The Oregon anti-SLAPP statute authorizes a defendant to make "a special motion to strike against a *claim* in a civil action" under specified circumstances. ORS 31.150 (emphasis added). The statute is clear that such a motion can be made against a claim, not a remedy. *Id.* (including language such as "motion to strike against a *claim*," "motion to strike may be made under this section against any *claim*," and "motion to strike may not be made against a *claim* under this section," and "defendant making a special motion to strike . . . has the initial burden of making a prima facie showing that the *claim* against which the motion is made" [emphasis added].) There is no federal or applicable state law to the contrary. Such matter should be challenged through a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

Miller argues the Court should strike Tallman's Complaint because it seeks, in part, injunctive relief to which Miller contends Tallman is not entitled. That is not a basis for a special motion to strike. If Miller contests Tallman's entitlement to injunctive relief, the Federal Rules of Civil Procedure provide appropriate mechanisms to challenge the request. Miller can file a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56. But Miller's contention that the Court must strike the Complaint under the anti-SLAPP statue is frivolous and unfounded.

5.     <u>Plaintiff's other defamation actions do not bar recovery.</u>

Miller next argues that Tallman's near-identical allegations of damages in four other complaints filed in Oregon state court constitute judicial admissions and thus bar him from proving that the same damages were caused by Miller. "Judicial admissions are formal, *factual* admissions in the pleadings that withdraw a fact from issue and dispense wholly with the need for proof of that fact." *Oregon Natural Desert Ass'n v. Bushue*, 644 F. Supp. 3d 813, 828 n.1 (D. Or. 2022) (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). Although "[a]llegations in a complaint are considered judicial admissions," *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008), that rule "applies only if the admission is made in the same judicial proceeding." *Aginsky v. Farmers Ins. Exchange*, 409 F. Supp. 2d 1230, 1236 (D. Or. 2005) ("The factual statement in a pleading in another judicial proceeding is 'some evidence' in this proceeding of a statement against interest.") (citation omitted); *see also Reynoso v. Fidelity Nat'l Title Ins. Co.*, No. 03:13-cv-01600-HZ, 2013 WL 6919666, at *5 (D. Or. Dec. 31, 2013) (stating that "a party is conclusively bound by factual allegations in his or her pleadings only for purposes of the case in which the admissions are made."). As a result, Tallman's damages allegations in his other state court complaints are non-binding in this action and thus Miller cannot rely on them in support of her motion.

Even if she could, Tallman's allegations against another defendant concerning that defendant's defamatory statements have no bearing on the damage that Miller caused Tallman. Although Miller may have a claim for indemnity or contribution against the joint tortfeasors, as they each potentially contributed to Tallman's damages collectively, that would not defeat Tallman's claims. If Miller believes the other defendants are contributorily responsible for Tallman's damages, she has a remedy: She can file cross-claims against them to ensure she is not disproportionately liable.

**C.      Defendant's Motion must be denied because Plaintiff has presented substantial evidence of a prima facie case.**

1.      Plaintiff has presented substantial evidence to support a prima facie case of defamation.

Defamation has three elements: (1) the making of a defamatory statement, (2) publication of the defamatory material to a third party, and (3) resulting harm from the publication of the statement. *Neumann*, 358 Or. at 711. "A defamatory statement is one that would subject the plaintiff 'to hatred, contempt or ridicule,'" would "tend to diminish the esteem, respect, goodwill or confidence in which [the **plaintiff**] is held," or would "excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff]." *Id.*

a.      Defendant's statements are about Tallman.

Ms. Miller argues, *inter alia*, that some of her statements are not about Tallman. However, it is implausible that any statements referring to "he," "him," or "this man" are about anyone *but* Tallman. The Police Report shared by Ms. Miller clearly states that Tallman is the individual being investigated. Consequently, a reasonable reader of Ms. Miller's statements would understand her statements to be about Tallman. *See Miller v. Sawant*, 18 F.4th 328, 338 (9th Cir. 2021) (plaintiff need only plead that a reader familiar with plaintiff would identify him as the subject of the statements at issue). At a minimum, her post implies that the comments are about Tallman, which is sufficient to support a claim for defamation. *See Forsher*, 26 Cal.3d at 803.

b.      Defendant's statements are false.

Defendant's accusations—in the Police Report, in her Facebook post, and in her Declaration—are false. *See* Tallman Decl., ¶¶ 22-34. This is supported by Tallman's declaration, the fact that the police department and district attorney opted to take no action against Tallman, and the fact that SafeSport reinstated Tallman following its investigation.

      c.    <u>Defendant's statements are defamatory assertions of objective fact.</u>

Stating that a person is a "predator" and engaged in "sexual and controlling behavior" towards minor is not an opinion; these are "assertion[s] of objective fact." *See Neumann*, 358 Or. at 715. Miller's other statements, memorialized in the Police Report and incorporated into her Facebook post, are also assertions of objective fact. To determine whether a statement is an assertion of objective fact, the *Neumann* court adopted a three-part inquiry. Here, the three-part inquiry is satisfied, as discussed above.

      d.    <u>Defendant published the statements.</u>

Defendant concedes that she posted the police report and made the statements posted on her Facebook page. Her focus is on whether the statements are defamatory.

      e.    <u>Defendant has harmed Plaintiff through the publication of the statements.</u>

Aside from reputational harm, Plaintiff's business at The Farmer's Cup has suffered since August 2023 when the statements were published. Tallman Decl., ¶¶ 40-42. Also, Tallman lost a separate income stream from Harvest Hosts due to the "unrest" created by the defamatory statements. Tallman Decl., ¶ 39, Ex. F.

      2.    <u>Plaintiff has presented substantial evidence to support a prima facie case of defamation per se.</u>

A defamation per se claim "shares two elements in common with an ordinary defamation claim: '(1) the making of a defamatory statement' and '(2) publication of the defamatory material.'" *Herrera v. C&M Victor Co.*, 265 Or. App. 689, 701 (2014); *NV Transport, Inc. v. V&Y Horizon, Inc.*, 302 Or. App. 707, 714 (2020). "[A] plaintiff who claims defamation *per se* need not prove the 'special harm' that is an element of an ordinary defamation claim." *Herrera*, 265 Or. App. at 701; *see also Neumann*, 358 Or. at 712; *NV Transport*, 302 Or. App. at 715. The plaintiff need only prove that "defendant published a certain type of defamatory statement that is deemed to be *per se* harmful." *Herrera*, 265 Or. App. at 701. Statements that a person committed a crime of "moral turpitude" are defamatory per se. A crime of moral turpitude has been described as an "act of baseness, vileness or depravity in the private and social duties which a

20

man owes to his fellow man or to society in general contrary to the accepted and customary rule of right and duty between man and man." *Ruble v. Kirkwood*, 125 Or. 316, 320–21 (1928); *see also Herrera*, 265 Or. App. at 701.

As with the defamation claim, Defendant does not contest whether the statements were made. She concedes.

Defendant's statements are defamatory *per se*. Miller states, in no uncertain terms, that Tallman is a predator" who engaged in "sexual and controlling behavior" toward minors.  Miller also alleges specific acts of sexual misconduct in the Police Report, which was incorporated into her Facebook post. Engaging in sexual conduct with a minor is undoubtedly a crime of "moral turpitude," i.e., a vile and depraved act, which is contrary to accepted and customary rules. No reasonable person could disagree.

Were those express statements not enough, contrary to Defendant's position, "it is not the literal truth or falsity of each word or detail used in a statement which determines whether or not it is defamatory; rather, the determinative question is whether the 'gist or sting' of the statement is true or false, benign or defamatory, in substance." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1181–82 (2000). Courts look to both "what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication." *Forsher*, 26 Cal.3d at p. 803. The gist of Miller's posts is that Tallman cannot be trusted around children because he is a sexual predator. Again, as stated above, such statements accuse Tallman of engaging in a crime of moral turpitude, sufficient to state a prima facie case of defamation *per se*.

3.      Plaintiff has presented substantial evidence to support a prima facie case of false light.

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and

21

the false light in which the other would be placed. *Dean v. Guard Pub. Co., Inc.*, 73 Or. App. 656, 659 (1985) (quoting Restatement (Second) of Torts § 652E). The light in which a person is placed is "highly offensive" if a reasonable person "would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." Restatement (Second) of Torts, § 652E, cmt. c. "[W]hen there is [] a major misrepresentation of [plaintiff's] character, history, activities, or belief [] serious offense may reasonably be expected to be taken by a reasonable [person] in [their] position." *Id.*

Contrary to Defendant's Motion, Plaintiff's false light claim does not rely on implications that can be drawn from Defendant's statements. Plaintiff's false light claim arises from Miller's specific acts and statements. First, Defendant's publication of the police report constitutes a false light invasion of privacy. By publishing the report, Defendant has given publicity to the matters discussed in the police report. The police report contains allegations that Tallman harassed two teenage girls by slapping their buttocks, touching their breasts, throwing ice down their shirts, and making inappropriate sexual comments to them. These allegations are false. Tallman Decl., ¶¶ 22-34. Such allegations also place Tallman in a false light that would be highly offensive to a reasonable person. Further, Defendant's allegations, which are memorialized in the police report, are false. Moreover, Defendant has not proffered any evidence to suggest that she made an effort to ascertain the truth or falsity of the matters published insofar as the police report contains allegations made by an undisclosed third party.

Second, Defendant published false statements about Tallman that would be highly offensive to a reasonable person, namely that he is a "predator." Tallman Decl., ¶ 20, Ex. C. Thus, both the publication of the police report and Defendant's published false statements support Tallman's claim for false light invasion of privacy. Tallman has therefore stated a prima facie claim for false light against Miller.

## D.    Plaintiff's Complaint should not be dismissed under Rule 12(b)(6).

To the extent Defendant argues that Plaintiff's Complaint is inadequately plead, Defendant's motion should be denied.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff." *Rinallo v. Capsa Solutions, LLC*, 222 F.Supp.3d 927 (D. Or. 2016). Accepting Tallman's allegations as true, there is no basis for dismissal of his claims under Rule 12(b)(6). As discussed, Tallman has alleged sufficient facts to state claims for relief that are plausible on their face.

In the unlikely event that this Court is inclined to grant dismiss this action for failure to state a claim, Tallman respectfully requests leave to file an amended complaint to correct any perceived deficiencies.

**E.    Defendant proffers inadmissible evidence in support of her Motion.**

Tallman objects to the introduction of Paragraph 9 and Exhibit 5 of the Declaration of Troy G. Sexton in Support of Defendant Michaela Miller's ORS 31.150 Special Motion to Strike. *See* Doc. 6-1. Paragraph 9 reads, "Attached as **Exhibit 5** is a screenshot of a police report made August 5, 2019 by officer Kyle Pearcy of the Boardman Police Department and shared by Frankie Nunez Lezamo in the 'Uncensored Boardman Community' Facebook group." Sexton does not identify who took the screenshot or when the screenshot was taken. Further, he does not state any facts indicating that he has personal knowledge sufficient to authenticate the document. There is no way to accurately determine if the document is what he purports. Since Paragraph 9 and Exhibit 5 lack authentication, lack foundation, and contain inadmissible hearsay, they must be excluded from evidence. *See* Fed. R. Evid. 701, 802.

Tallman objects to the introduction of the entire Declaration of Michaela Miller in Support of ORS 31.150 Special Motion to Strike. *See* Doc. 7. The declaration was filed on November 28, 2023, the day after the Motion and all supporting evidence were due. For this reason alone, the Court should disregard the entire declaration.

23

If the Court considers the untimely filed declaration, Paragraph 24 should be excluded from evidence. It reads:

> Since I made my report of Tallman's conduct to the Police, discussions about his interactions with minor girls have been a regular topic of conversation in the Boardman community, both online and in person. My police report has been discussed by many people, and there has been regular speculation about who the person was that reported it. Before I made the Exhibit 2 Facebook post, no one other than close family and friends knew that the Exhibit 1 Police report originated with my statements to the police.

These statements lack foundation, are not based on the declarant's personal knowledge, assume facts not in evidence, and contain inadmissible hearsay. *See* Fed. R. Evid. 701, 802.

Similarly, the second sentence of Paragraph 26 of the Miller Declaration should be excluded from evidence. It reads, "Shortly after I shared the post, it was removed, because the moderator of that page is a friend of Tallman." This statement lacks foundation, lacks personal knowledge, assumes facts not in evidence, and is irrelevant. *See* Fed. R. Evid. 402, 701, 802.

**F.     Plaintiff is entitled to recover his attorney's fees and costs.**

Oregon Revised Statues 31.152(3) states, in relevant part, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to a plaintiff who prevails on a special motion to strike." "Frivolous" is defined as "[l]acking a legal basis or legal merit; manifestly insufficient as a matter of laws." BLACK'S LAW DICTIONARY, *frivolous* (11th ed. 2019).

Miller's only colorable argument to support her Motion concerns whether Tallman can carry his burden under the second prong of the anti-SLAPP test, and even on that point, Miller only presents her own self-serving declaration, which is contradicted by Tallman's declaration, the lack of prosecution arising from the investigation into the matter, and SafeSport's decision to reinstate Tallman following its independent investigation. Miller knew, or reasonably should have known, with the advice of counsel that this is insufficient to defeat Plaintiff's claim as a matter of law under the standard applied to anti-SLAPP motions.

24

Moreover, Miller's legal arguments are without any basis in the law. Miller's fair-comment defense is precluded by well-established precedent holding that the defense does not apply to statements accusing someone of a crime. Likewise, Miller's opinion and First Amendment argument is precluded because the statements are assertions of objective fact, not opinion. Miller relies on a tortured reading of *Campos* to argue to the contrary, but *Campos* itself makes clear that the publication must be considered as a whole. Finally, Miller advances the incremental harm doctrine even though it has been expressly rejected by the Ninth Circuit and never even considered in Oregon. The entire Motion is frivolous, but even if the Court were to find it is not, it should still deem these arguments, which are contrary to well-established precedent, frivolous and award Tallman attorney's fees and costs incurred dealing with those issues.

## V.    <u>CONCLUSION</u>

Although Miller carried her burden under the first prong of the anti-SLAPP test, Tallman has likewise carried his burden under the second prong of the anti-SLAPP test. Miller's legal arguments are entirely without merit—if not frivolous—and Tallman has presented substantial evidence to support his prima facie case. Miller's Motion should therefore be denied and deemed frivolous—at least in part.

DATED:  December 11, 2023

BUCHALTER, APC


By  <u>*/s/ Christina M. Morgan*</u>
       **Daniel P. Larsen, OSB: 943645**
       **Email:  dlarsen@buchalter.com**
       **Christina M. Morgan, CA SBN: 277877**
       **Email:  cmorgan@buchalter.com**
       **Josh H. Escovedo, CA SBN: 284506**
       **Email:  jescovedo@buchalter.com**
       Telephone: 503.226.1191

       Attorneys for Plaintiff