IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JONATHAN TALLMAN, an individual, | No. 2:23-cv-01592-HL |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| MICHAELA MILLER, an individual. | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Jonathan Tallman filed this action against Defendant Michaela Miller, alleging that certain Facebook posts she made about him were false and defamatory. Tallman seeks damages and injunctive relief under Oregon state law. Miller now brings this anti-SLAPP motion against Tallman, seeking dismissal of Tallman's claims of defamation, defamation per se, and false light pursuant to Oregon Revised Statute § ("ORS") 31.150. Def.'s Mot. to Strike and Dismiss, ECF 6. This Court heard oral argument on this motion on March 5, 2024.[1] ECF 24. For the following reasons, Miller's motion should be DENIED.

---

[1] This Court heard combined oral argument in this case and a related case, *Tallman v. Spencer*, No. 2:23-cv-01733-HL. But the cases are not otherwise consolidated.

# BACKGROUND

Miller and Tallman both lived in the small town of Boardman, Oregon. Compl. ¶ 4, ECF 1-1. Tallman is a youth soccer coach, Tallman Decl. ¶¶ 35-36, ECF 11-1, and has unsuccessfully run for local office four times between 2019 and 2023, *id.* ¶¶ 4-7. He also operates a local coffee shop called The Farmer's Cup. *Id.* ¶ 9. Miller worked at the coffee shop from March to September of 2019. *Id.* ¶ 10. Miller was 16 years old when she began working for Tallman. Miller Decl. II ¶ 3, ECF 7.

Tallman's defamation, defamation per se, and false light claims arise out of Miller's accusations that Tallman engaged in sexual misconduct when she worked at his coffee shop. Miller alleges that she experienced "highly inappropriate" conduct from Tallman when he was her employer at the coffee shop, including rubbing her shoulders and arms, commenting on her appearance, putting ice down her shirt, smacking her buttocks, touching her breasts, and asking about her sexual relations with her boyfriend. *Id.* ¶¶ 6-13. Miller alleges that she witnessed similar behavior from Tallman that was directed at another underage employee. *Id.* ¶ 18. Around that time, at a high school sports practice, Miller's coach overheard her talking about that conduct with her teammate and coworker. *Id.* ¶ 20. The coach reported it to the Boardman Police Department, which investigated and prepared a police report containing the allegations from Miller. Tallman Decl. ¶ 13. But Tallman was not charged with any crimes. *Id.* ¶ 15.

The specific conduct at issue in this anti-SLAPP motion is a 2023 Facebook post from Miller, which Tallman alleges is grounds for his defamation, defamation per se, and false light claims. Compl. ¶ 8. On August 25, 2023, a community member, Frankie Nunez Lezamo, publicly posted an excerpt from the police report to Facebook. Tallman Decl. ¶ 19, Ex. B. Miller then shared that post, including the police report, accompanied by the following caption:

I hope my story will be used to make a difference in the protection of the children in Boardman

here's the truth

I was 16 when this police report was made
To young to understand that What i was experiencing was building blocks to an agenda

To young to know where to set boundaries and when to speak up

For the past 4 years I watched from behind the screen as a vague description of my story has been told on social media, Used to protect our city and its children from a man who I once considered a family friend,
Someone who used to play catch with me in his parents back yard, give me a ride to practice, teach me how to drive, come to my sports games, drop off strawberry lemonade at my house, and so much more
,But what was a 40 year old man doing creating a fun loving space for a 13-16 year old girl
Something I wish I would have asked myself sooner
gratefully I was lucky enough to have been surrounded by friends and coaches who started to pick up on the sexual and controlling behaviors this man was using towards me, where it could have gone I don't even want to try to imagine

As an adult now I look back more on my situation and it breaks my heart I was to naive to realize what was going on, there was a lot of stuff that I was to embarrassed to say to the police and I wish I could go back protect my self and my friends, unfortunately I can't
But my story can make make a difference in protecting the children now

This is not the first time this man has tried to receive a position where he would be given the opportunity to work one on one with kids, given the opportunity to create a "fun and loving" environment for them,
I am also not the only one with a story already, and unfortunately I wasn't the last.

Publicly announcing this is one of the most terrifying things I have ever posted. Putting myself in a position to be called names, accused of being a liar, and for my name to be talked amongst the people of Boardman

But it is my goal that the city will start to see this man as a Predator
And use my story to protect others

Thank you Nunez family and so many other family's who have been my supporters through
this journey, I would not have had the confidence to speak up if it wasn't for you

Compl. ¶ 8; Tallman Decl., ¶ 20, Ex. C.

Tallman claims that Miller's statements are false. Compl. ¶ 16. He further claims that, due to the Facebook post, the Columbia Youth Soccer Club reported him to the U.S. Center for SafeSport. *Id.* ¶ 12. SafeSport suspended Tallman from participating in the Oregon Youth Soccer Association and its affiliated member clubs while it investigated him. *Id.* ¶ 13. Once the investigation was complete, he asserts that they found that the claims were meritless and allowed him to return as a coach. Opp'n to Mot. to Strike 6, ECF 11. In addition, Tallman claims that Harvest Hosts, a membership organization for RV travelers, will no longer allow Tallman to host travelers. Tallman Decl., ¶ 39, Ex. F. Tallman also reports experiencing a decrease in local business at his coffee shop, including having a contractor refuse to continue doing business with him. Compl. ¶¶ 14-15.

Tallman filed this action on September 18, 2023, and it was removed to this Court on October 27, 2023. Def.'s Notice of Removal, ECF 1. Tallman's complaint alleges that Miller's Facebook statements constitute defamation, defamation per se, and false light. Compl. ¶¶ 20-34.

This action represents one of five lawsuits brought by Tallman against six defendants for their online comments about him in relation to prior police investigations into his conduct. Sexton Dec. ¶ 3, ECF 6-1, Ex.1-4. Each lawsuit alleges $200,000 in damages for the harms alleged above. *Id.* ¶ 4.

## STANDARDS

Oregon, like many states, has an anti-SLAPP statute meant to protect individuals from "SLAPP" lawsuits, or "Strategic Lawsuits Against Public Participation." *Staten v. Steel*, 222 Or. App. 17, 30 (2008) (discussing ORS § 31.150). Oregon's anti-SLAPP statute provides an "inexpensive and quick process by which claims that might infringe on the right to petition and

free speech on public issues c[an] be evaluated to determine if they [are] frivolous." *Page v. Parsons*, 249 Or. App. 445, 461 (2012). Specifically, the statute "allows defendants who claim that the litigation against them is a strategic attempt to chill their participation in public affairs to expeditiously obtain dismissal before incurring significant litigation expenses by filing, instead of an answer, a 'special motion to strike' the complaint." *Clackamas River Water v. Holloway*, 261 Or. App. 852, 854 n.1 (2014).

The statute uses a two-step, burden-shifting framework. "First, the court must determine whether the defendant has met its initial burden to show that the claim against which the motion is made 'arises out of' one or more protected activities described in subsection (2)." *Young v. Davis*, 259 Or. App. 497, 501 (2013) (quoting ORS 31.150(3)). Subsection (2) defines protected activities to include those that are "oral or written statements made in governmental proceedings or in a public forum in connection with an issue of public interest, as well as any other exercise of the right of speech related to an issue of public interest." *Handy v. Lane Cnty.*, 274 Or. App. 644, 651 (2015).[2]

Second, the burden shifts to the plaintiff to establish a "probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Young*, 259 Or. App. at 501 (quoting ORS 31.150(3)). The special motion is denied if the plaintiff meets that burden. *Id.* Oregon courts have interpreted "probability" of prevailing on the

---

[2] Tallman concedes that the Complaint on its face satisfies the first prong of the anti-SLAPP statute, and the Court agrees. Opp'n to Mot. to Strike 8. Specifically, Miller is being sued for comments she made on Facebook about the alleged sexual misconduct by Tallman. Statements about his sexual misconduct as an employer and his alleged criminal behavior are of public concern. And Miller's post is a "written statement…. in a place open to the public or a public forum in connection with an issue of public interest." ORS 31.150(2).

claim as a "low bar," requiring substantial evidence to support a prima facie claim against the defendant. *Id.* at 508.

"[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). When the motion challenges the factual sufficiency of a claim, then the Court applies the Rule 56 standard, and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

## DISCUSSION

Miller moves to dismiss Tallman's claims under the anti-SLAPP statute, arguing that her statements are constitutionally protected and provide for no colorable claim of defamation or false light. Def.'s Mot. 11-13. Specifically, she argues that Tallman is a public figure, thereby requiring Tallman to show actual malice, not mere negligence by Miller. *Id.* at 27-29. Miller then argues that her Facebook post did not constitute a statement of objective fact and therefore cannot be actionable. *Id.* at 16-24. She argues that her statements are protected by a qualified privilege. *Id.* at 14-16. Miller also argues that Tallman failed to make a plausible showing of negligence on her part and, moreover, failed to provide sufficient facts to meet the "probability" anti-SLAPP standard for his claims of defamation, defamation per se, and false light. *Id.* at 29-32. Finally, Miller claims that Tallman is not entitled to injunctive relief, *id.* at 32-33, and that his claims fail under theories of "incremental harm," inconsistent judicial admissions of fact, and judicial estoppel, *id.* at 24-27. Tallman opposes the motion on each ground and seeks attorney fees on the grounds that Miller's arguments are frivolous. Opp'n to Mot. to Strike 25.

Having fully considered the parties arguments, this Court concludes that Miller's anti-SLAPP motion should be DENIED and Tallman's request for attorney fees should be DENIED.

## I.    Tallman is not a general- or limited-purpose public figure.

Defamation claims brought by public figures are subject to heightened standards. When the plaintiff is a public figure, there is a constitutional privilege that requires the plaintiff to prove that the statements were made with "actual malice"—i.e., that the defendant knew that the statement was false or showed reckless disregard for the truth. *Curtis Publ'g Co. v. Butts and Associated Press v. Walker*, 388 U.S. 130, 164-65 (1967) (Warren, C.J., concurring). Public figures can be general-purpose public figures or limited-purpose public figures. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A general-purpose public figure is one who achieves "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Id.* "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed [a general-purpose public figure]." *Id.* at 352.

A limited-purpose public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351. Unlike a general-purpose public figure, a limited-purpose public figure loses protections only insofar as the defamatory controversy relates to the individual's role in a public controversy. *See Wheeler v. Green*, 286 Or. 99, 114, 116-17 (1979). To determine limited-public figure status, courts look to "the nature and extent of [the person's] participation in the particular controversy giving rise to the defamation." *Gertz*, 418 U.S. at 352. Specifically, courts apply a three-part test to make the assessment, asking (i) whether a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's

participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution. *Makaeff v. Trump Univ.*, 715 F.3d 254, 266 (9th Cir. 2013) (citing *Gertz*, 418 U.S. at 351-52). A public controversy is a controversy that "affects the general public or some segment of it." *Id.* at 267.

Tallman does not possess the "pervasive" public characteristics needed to qualify as a general-purpose public figure. He also does not qualify as a limited-purpose public figure because there is no nexus between the subject matter of the defamatory statement and the purpose for which Tallman is a public figure.

Under *Gertz's* first element—whether the "controversy" existed at the time of the statement—Tallman ran for office four times between 2019 and 2023, and he may well run again. Tallman was no longer running for office, but that does not negate his status as a limited-purpose public figure because "the passage of time does not alter an individual's status as a limited purpose public figure" for that specific controversy. *Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th Cir. 1995). The Court agrees with Miller that the public controversy existed at the time the statements were made, even though the most recent campaign had ended.

But Miller does not prevail on the second and third elements under *Gertz*, which ask whether the alleged defamation is related to Tallman's public participation and whether Tallman injected himself into the controversy. "Limited purpose public figures are exactly that—public figures for a limited purpose. They must have voluntarily injected themselves into the controversy over which the alleged defamation relates." *Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1241 (D. Or. 2017), *aff'd*, 758 F. App'x 582 (9th Cir. 2018). It is therefore critical to the analysis that the subject of Tallman's public exposure—running for political office numerous times—is related to Miller's statements. But Miller's statements make no reference to

Tallman's campaigns or his fitness to serve in any of these capacities and are therefore unrelated to Tallman's public participation. Moreover, there is no evidence that these statements were made in response to any actions taken by Tallman.

In sum, because all three prongs under *Gertz* are not satisfied with respect to the statement at issue, Tallman is not a limited-purpose public figure.

## II.    Miller's statements imply an assertion of objective fact.

"[T]o determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern. If it does, then the dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Neumann v. Liles*, 358 Or. 706, 718-19 (2016). Here, there is no dispute that the statements at issue–allegations that Tallman was involved in crimes–are matters of public concern. *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1292 (9th Cir. 2014) ("Public allegations that someone is involved in crime generally are speech on a matter of public concern.").

Courts apply a three-part framework to determine whether the statement implies an assertion of objective fact: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement is susceptible of being proved true or false. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). Courts do not examine statements independently or in isolation; they consider the "work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements

imply a false assertion of objective fact and therefore fall outside the protection of the First Amendment." *Neumann*, 358 Or. at 719.

Here, applying the first part of the *Neumann* framework, the tenor of the statement does not tend to negate the impression of an objective fact. In her Facebook post, Miller is asserting that she was one of the victims of the allegations in the police report, which is quoted in the post. While she indeed expresses opinions about what she hopes will come of revealing this information, it is the revealing and publication of that information that is at the heart of the defamation and what allegedly caused Tallman to suffer.

Miller relies heavily on *Campos v. Jensen*, 296 Or. App. 402 (2019), to argue that her statement was opinion. There, it was the defendant's friend—not the defendant herself—who had accused the plaintiff of sexual misconduct, while the defendant had primarily made statements in support of her friend, the alleged victim. *Id.* at 403-05. The court concluded that the defendant's statements predominantly expressed the defendant's opinion of her friend and her credibility. *Id.* at 412-14. But here, Miller is the alleged victim, and she is making a claim about the danger that Tallman poses, based on the allegation that Tallman committed sexual misconduct. While she expresses her "hope" that other young women will be less naïve and respond differently in similar situations, that hope, which indeed is arguably subjective, is based on the factual allegation that she is the woman that was subject to sexual misconduct by Tallman.

Under the second part of the *Neumann* framework, the Court looks to whether the use of "figurative or hyperbolic language negates the impression that [defendant] was asserting objective facts." *Neumann*, 358 Or. at 721. Here, again, it does not. The use of "sexually controlling behavior" does not have the characteristics of hyperbolic language; the words objectively describe facts and are not terms generally associated with hyperbole. The word

"predator" is a closer call—specifically, when Miller states that she hopes "the city will start to see this man as a Predator." Even if this term, by itself, is hyperbolic, the overall statement and the context in which it is presented does not negate the impression that Miller is describing objective facts about what may have transpired with Tallman.

The third and final part of the *Neumann* framework asks whether the challenged statements are "susceptible of being proved true or false." *Chief Aircraft, Inc. v. Grill*, 288 Or. App. 729, 733-34 (2017). In addressing analogous defamation claims related to a defendant's personal accusation of sexual misconduct, courts have denied a defendant's anti-SLAPP motion. *See, e.g.*, *Todd v. Lovecraft*, No. 19-cv-01751-DMR, 2020 WL 60199, at *20-21 (N.D. Cal. 2020) (holding that the plaintiff met his prima facie burden with respect to the defendant's statements to the extent they accused the plaintiff of sexual misconduct toward the defendant and denying the anti-SLAPP motion on that ground); *see also Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 WL 5035662, at *11-12 (D. Or. 2023) (reaching a similar result). Moreover, courts have recognized that statements that a plaintiff "committed serious, and potentially criminal, acts" could be "proved true or false." *Brooks v. Clyne*, No. 3:19-cv-02085-HZ, 2021 WL 359733, at *7 (D. Or. 2021); *see also Campos*, 296 Or. App. at 412 (acknowledging that a question of guilt or innocence is capable of being proven true or false). Here, Miller's statements accused Tallman of sexual misconduct, a serious and potentially criminal act. Thus, as in the cases discussed above, those statements can be proved true or false.

In sum, application of the framework set forth in *Neumann* demonstrates that Miller's statements are not opinion, but rather are objective statements of fact. Because they are therefore actionable, Miller's statements are not entitled to First Amendment privilege.

III.    **Miller's statements are not protected by a qualified privilege at this stage of the**
        **proceedings.**

"Oregon recognizes the defenses of qualified privilege and absolute privilege to
allegations of defamation. The former requires a plaintiff to prove that a defendant acted with
actual malice; the latter bars the defamation claim altogether." *DeLong v. Yu Enter., Inc*., 334 Or.
166, 170 (2002). "A 'qualified privilege' requires the plaintiff to prove that the defendant abused
the 'privileged occasion.'" *Id.* (quoting *Wallulis v. Dymowski*, 323 Or. 337, 348 (1996)).
"Generally, a qualified privilege exists to protect three kinds of statements: (1) those made to
protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or
(3) those made on a subject of mutual concern to the defendant and the persons to whom the
statement was made." *Id.*[3]

Miller asserts that her statements were protected by a qualified privilege because Tallman
"invited comment" on his qualifications to work with children and coach soccer. Def.'s Mot. 16.
She also asserts that because the community was discussing the redacted police reports, she "had
a right to address the rumors that she was a victim whose name was redacted." *Id.*

To begin with, it is unclear whether Miller's statements would be protected by a qualified
privilege. In *Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2024 WL 3640108, at *5-10 (D. Or.
2024), Judge Beckerman concluded that the conditional privilege for family relationships

---

[3] Miller refers to the "fair comment privilege" in her motion to strike, but later clarifies that the
"modern statement" of that privilege is simply the qualified privilege referred to in *DeLong*.
Def.'s Reply in Supp. of Mot. to Strike 15, ECF 13. Based on that framing, this Court agrees
with Miller that this defense is based on the circumstances of who is making the statement rather
than the content of that statement. Thus, Tallman's assertions that this privilege does not apply to
opinions is misplaced. If the statement is opinion, it is protected under the First Amendment and
there would be no need for a privilege.

protected a defendant who informed members of her immediate family that another family member had sexually abused her. That statement was published with the intent to warn family members of the abuse. *Id.* at *9. The court also indicated that this rule applied to statements made to family members and to a non-family recipient whose knowledge of the defamatory matter will be of service in the lawful protection of the well-being of the family member. *Id.* at *7-8. But there is no caselaw that would support Miller's position that posting those same statements on Facebook, where they are available to the general public, would enjoy the same qualified privilege.

Ultimately, this Court need not resolve that issue. In this anti-SLAPP motion, Tallman is only required to present substantial evidence to support a prima facie claim against Miller. *Young*, 259 Or. App. at 508. Even if Miller's statements were protected by a qualified privilege, Tallman has presented substantial evidence that Miller knew that she was making false statements, which would be an abuse of that privilege. *See Cooper v. Portland Gen. Elec. Corp.*, 110 Or. App. 581, 590 (1992) ("[A] qualified privilege, as a general proposition, may be abused [by] . . . the publisher's lack of belief or reasonable grounds for belief in the truth of the defamatory statement."). Indeed, Tallman has offered his own declaration that directly refutes Miller's statements to the police and in the Facebook post. Tallman Decl. ¶¶ 22-34. When applying the Rule 56 standard—as this Court must when faced with an evidentiary challenge in an anti-SLAPP motion—that evidence must be viewed in the light most favorable to Tallman. When viewed in that light, a reasonable juror could find that Miller did not have a reasonable belief in the truth of her statements. Accordingly, even if Miller's statements were protected by a qualified privilege, there is a genuine issue of material fact as to whether she abused that privilege. *Cf. Wahab*, 2024 WL 3640108, at *11 (recognizing that the plaintiff disputed the

allegations of sexual assault but concluding that there was no evidence in the record for a reasonable juror to infer that the defendant had no reasonable belief in the truth of those statements).

## IV.    Tallman has established a probability he will prevail on the claims.

### A.    Defamation

Defamation has three elements: (1) the making of a defamatory statement, (2) publication of the defamatory material to a third party, and (3) resulting harm from the publication of the statement. *Neumann*, 358 Or. at 711. "A defamatory statement is one that would subject the plaintiff 'to hatred, contempt or ridicule,'" would "tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held," or would "excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff]." *Id.* In addition, the First Amendment requires a "negligence standard for private defamation actions" involving a matter of public concern. *Gertz*, 418 U.S. at 350; *Obsidian*, 740 F.3d at 1289.

Here, Tallman has demonstrated a sufficient probability that he can produce substantial evidence of a defamation claim, including evidence to support a finding of negligence by Miller. Miller argues that Tallman overstates the accusatory nature of the post, arguing that the comments did not accuse Tallman of molesting children or young women. Def.'s Mot. 30. This Court rejects that argument for the same reason that it concludes that Miller's posts included statements of objective fact, which would clearly excite derogatory feelings towards Plaintiff. On the second and third elements, there is no dispute that the statement was published and that Tallman plausibly alleges resulting harm to his business and his reputation. Tallman has therefore presented substantial evidence to support a prima facie claim for defamation against Miller.

With respect to negligence, Tallman has demonstrated a probability of showing at least negligence as to the alleged falsity of the statement. As discussed above, Miller made statements of objective fact that she was sexually assaulted by Tallman, which Tallman now asserts were provably false and that Miller knew they were false. Compl. ¶¶ 22, 27, 33. Based on this evidence, there are only two plausible inferences that can be drawn from the allegations in the complaint: Miller is lying about the alleged abuse, or she is not. If she is lying, she will have exhibited actual malice, a standard higher than negligence. *See Khawar v. Globe Int'l, Inc.*, 965 P.2d 696, 712 (Cal. 1998) ("Because actual malice is a higher fault standard than negligence, a finding of actual malice generally includes a finding of negligence, and evidence that is sufficient to support a finding of actual malice is usually, and perhaps invariably, sufficient also to support a finding of negligence."). Consequently, the Court finds that Tallman has demonstrated a probability of prevailing on his negligence claim.[4]

**B.     Defamation per se claim.**

Tallman's defamation per se claim also survives. Whereas a defamation claim has three elements, a claim for defamation per se only contains the first two. *Herrera v. C & M Victor Co.*, 265 Or. App. 689, 701 (2014); *NV Transp., Inc. v. V&Y Horizon, Inc.*, 302 Or. App. 707, 714 (2020). Instead of requiring proof of harm, a defamation per se claim assumes that certain kinds of statements are inherently, or per se, harmful. *Herrera*, 265 Or. App. at 701. Such claims include imputations of a crime of "moral turpitude." *Id.* Crimes of moral turpitude are those that

---

[4] Miller alleges that Tallman's defamation claim is subject to dismissal for failure to plead negligence. Def.'s Mot. 29-30. Unlike Plaintiff's defamation per se and false light claims, Plaintiff's defamation claim does not include specific allegations of negligence. Compl. ¶¶ 21-23. But the claim realleges the preceding paragraphs of the complaint, *id.* ¶ 20, which contain sufficient factual allegations to plausibly demonstrate that Miller was acting with at least negligence.

involve "[a]n act of baseness, vileness or depravity" and are contrary to the "accepted and customary rule of right and duty between man and man." *Ruble v. Kirkwood*, 125 Or. 316, 320-21 (1928). Because Miller's statement alleges a crime of moral turpitude, and because Tallman has otherwise demonstrated a probability of prevailing on his defamation claim, Tallman has also demonstrated a probability of prevailing on the defamation per se claim.

### C.   False Light Claim

Miller also seeks to dismiss Tallman's claim of false light. Oregon applies the false light elements from the Restatement (Second) Torts. *Dean v. Guard Pub. Co.*, 73 Or. App. 656, 659–60 (1985). Under this standard, false light claims have two requirements: that the false light the plaintiff is put into would be highly offensive to a reasonable person, and that the defendant has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restatement (Second) of Torts § 652E (Am. L. Inst. 1977).

On the first prong, Miller's accusations in this case place Tallman in a light that would be highly offensive to a reasonable person. Claiming that Tallman is engaged in sexual misconduct would, if false, cause a reasonable person to feel "seriously offended and aggrieved by the publicity." Restatement (Second) of Torts, § 652E, cmt. c. Miller claims that the false light claim is based on speculative implications of Miller's statements, not the statements themselves. Def.'s Mot. 32. Yet, like the defamation claim, the "false light" experienced by Tallman arises directly from the statements. The claim that Tallman is predatory and sexually controlling of minors and women is a statement that a reasonable person would find highly offensive. On the second element, to prevail on the false light claim, Tallman must show that Miller had knowledge of or acted in reckless disregard for the truth. Here, the question is whether Miller is telling the truth as

to what transpired with Tallman. That is a fact question that the Court is unwilling to resolve at this stage. Thus, the false light claim survives the motion to strike.

## V.    Injunctive Relief

Miller asks the Court to strike Tallman's complaint because he seeks injunctive relief, to which Miller claims that Tallman is not entitled. Def.'s Mot. 32-33. The anti-SLAPP statute, however, does not provide for a motion to strike a complaint of an improper remedy. The statute states that there is a remedy against a "claim." In *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010), the Court held that improper remedy was not a basis for a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure; the Court instead concluded that the movant could pursue a motion to dismiss under Rule 12(b)(6), challenging the legal sufficiently of the claim. Here too, the Oregon anti-SLAPP statute is not a proper basis for a motion to strike.

## VI.    Multiple Defendants

Miller raises numerous additional challenges on the basis that Tallman improperly raised the same claims against numerous defendants. *See* Def.'s Mot. 24-27. None of these challenges are sufficient to grant Tallman's motion.

First, Miller invokes the "incremental harm" doctrine, arguing that it bars Tallman's claims. *Id.* at 25. Miller asserts that Tallman must prove that her statements caused harm beyond the unchallenged police reports and the statements made by individuals in the other defamation actions. *Id.* at 26. The Supreme Court has held that the incremental harm doctrine is not compelled in defamation cases, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 523 (1991), the Ninth Circuit has held that it is not an element of California libel law, *Masson v. New Yorker*

*Magazine, Inc.*, 960 F.2d 896, 898 (9th Cir. 1992), and Oregon courts have not applied it. Thus, the incremental harm doctrine should not be applied to bar Tallman's claims.

Miller offers two related theories to strike Tallman's claims. First, Miller argues that Tallman's claims against other defendants constitute judicial admissions of fact that necessarily bar him from proving the same damages were caused by Miller in this case. Def.'s Mot. 24-25. In other words, because Tallman has claimed, or "admitted," that conduct from other defendants has caused the same damages that he claims here, then it cannot be that Miller independently caused this harm. To this point, Miller argues that Tallman fails to present any evidence that it was her statements that caused the harm to Tallman. Def.'s Reply in Supp. of Mot. to Strike 10, ECF 13. Second, in the reply brief, Miller argues judicial estoppel. *Id.* at 3-6. Specifically, Tallman obtained a default order against Faith Spencer on December 6, 2023, which prevents him from making contrary allegations in other litigation. Sexton Supp. Dec. ¶ 2, ECF 13-1.

The Court also rejects this line of argument. For one, because allegations in a complaint are only considered judicial admissions in the same judicial proceeding, the allegations for damages in other proceedings are not binding here. *See Aginsky v. Farmers Ins. Exch.*, 409 F. Supp. 2d 1230, 1236 (D. Or. 2005) ("The factual statement in a pleading in another judicial proceeding is 'some evidence' in this proceeding of a statement against interest."). Further, in this motion to strike, facts are construed in the light most favorable to the non-movant, Tallman. Under this standard—and contrary to Miller's assertion—there is causal evidence to support a claim of harm. Tallman's declaration references letters from both the youth soccer league and the Harvest Hosts citing the "allegations, rumors, and information posted online," as well as the "unrest" in the community, as reasons for his suspension from these organizations. Tallman Decl. ¶¶ 35, 37, Ex. D, F. These statements can easily be construed as causal allegations that the

conduct of Miller led to the harm that Tallman is alleging. Finally, a reading of the pleadings in the light most favorable to Tallman also suggests that the allegations are not so inconsistent as to trigger judicial estoppel. At this stage, Tallman is plausibly seeking similar damages from each of the defendants, which is all he must demonstrate to establish a probability that he will prevail on this particular claim and defeat Miller's anti-SLAPP motion.

## VII.   Attorney fees

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to a plaintiff who prevails on a special motion to strike." ORS 31.152(3). Tallman asserts that the entire motion and each of Miller's arguments are frivolous such that attorney fees should be awarded. Opp'n to Mot. to Strike 25. This Court disagrees. As should be evidenced by this Court's extensive discussion of Miller's motion, each of Miller's arguments had some factual basis and included a well-grounded legal argument. *See Cantua v. Creager*, 169 Or. App. 81, 98 (2000) ("[F]rivolous" is defined as "without factual basis or well-grounded legal argument."). Accordingly, Tallman's request for attorney fees should be denied.

**RECOMMENDATION**

Defendant Miller's Motion to Strike, ECF 6, should be DENIED and Plaintiff Tallman's request for Attorney's fees should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 17th day of September, 2024.

ANDREW HALLMAN
United States Magistrate Judge