**Troy G. Sexton**, OSB No. 115184
troy@elevatelawpdx.com
**Ryan H. Ripp**, OSB No. 204332
Elevate Law Group
6000 Meadows Road, Suite 450
Lake Oswego, OR 97035
P: 503-417-0500
F: 503-417-0501

*Counsel for Defendant Michaela Miller*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Pendleton Division

| | |
|---|---|
| JONATHAN TALLMAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MICHAELA MILLER, an individual,<br><br>Defendant. | Case No. 2:23-cv-01592-HL<br><br>**OBJECTION TO FINDINGS AND RECOMMENDATION**<br><br>**ORAL ARGUMENT REQUESTED** |

## OBJECTION

Defendant Michaela Miller ("***Miller***") objects to Magistrate Judge Andrew Hallman's Findings and Recommendation [ECF 27] (the "***F&R***") pursuant to USC § 636(b)(1) and Fed. R. Civ. Pro. 72(b). Specifically, Miller objects to Judge Hallman's recommendation that her ORS 31.150 Special Motion to Strike [ECF 6] (the "***Motion***") be denied, together with certain findings made in the F&R. Miller seeks de novo review of the F&R, pursuant to FRCP 72(b)(3).

This objection is supported by the existing record, matters subject to judicial notice, the Declaration of Ryan H. Ripp (the "***Ripp Dec.***"), and any further evidence or argument that Miller might offer in reply or at a hearing on this objection.

Page 1 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

## INTRODUCTION

The F&R finds that Plaintiff Jonathan Tallman ("***Tallman***") has presented sufficient evidence to establish a probability that he will prevail on his claims, thereby meeting his burden under Oregon's anti-SLAPP analytical framework and defeating the Motion. F&R [ECF 27],p. 5–6. Miller objects to this finding because it is based on a misapplication of the operative legal authority.

The F&R also found that Tallman is not a public figure. *Id*. at p. 7–8. Miller objects to this finding because a proper application of case law can only find that a prominent member of the local community who earned that prominence by running for political office is a public figure.

The F&R also found that judicial admissions and judicial estoppel did not bar Tallman's claims. *Id*. at 18–19. In making that finding, Judge Hallman failed to evaluate the evidence under the proper standard and to consider the state court judgment in the Spencer matter. In that case, Tallman obtained a final judgment awarding him damages against another person—Faith Spencer—for the exact harm that he claims was caused by Miller here. Spencer and Miller cannot, as matter of logic and law, have caused the same harm from separate actions, and judicial estoppel should act to bar that conclusion in the F&R.

Miller respectfully asks the Court to consider this matter anew and make independent determinations concerning the F&R's recommendation and findings.

## STANDARDS

"The district court judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FRCP 72(b)(3); *see also* 28 USC § 636(b)(1); *Dawson v. Marshall*, 561 F3d 930, 932 (9th Cir 2009). *De novo* review means that the district court must consider the matter "as if it had not been

Page 2 of 14
{00685805:4}
OBJECTION TO FINDINGS AND RECOMMENDATION

**Elevate Law Group**
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

heard before and as if no decision previously had been rendered." *Ness v. Commissioner*, 954 F2d 1495, 1497 (9th Cir 1992).

"The district court reviews *de novo* those portions of the findings of fact which objections have been made." *Coleman v. Wilson*, 912 F Supp 1282, 1298 (E D Ca 1995) (citing *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F2d 1309, 1313 (9th Cir 1981). "The court is not bound to adopt the magistrate judge's findings and recommendations; on the contrary, the court must exercise 'sound judicial discretion' in making its own determination on the record." *Coleman*, 912 F Supp at 1298 (citing *United States v. Raddatz*, 447 US 667, 675–76 (1980).

## ARGUMENT

### 1. The F&R erred in finding that Tallman is not a public figure.

Tallman's burden is to present substantial evidence to support a prima facie case. F&R [ECF 27], p. 5 (citing *Young*, 259 Or App at 501). Judge Hallman correctly determined that Tallman is required to prove that Miller's statements were made with actual malice if Tallman is a general or limited purpose public figure. *Id.* at p. 7 (citing *Curtis Publ'g Co.*, 388 US at 164–65).

### (a) Tallman is a public figure in the Boardman Community.

Tallman's own allegations support that he is a prominent member of the Boardman community and earned that prominence by thrusting himself into community discussions by running for political office. Tallman has run for local political office twice, and "[f]or this reason alone, any reader would understand that a reference to a person whose "name has been on TWO of our ballots" is referring to Tallman. Ripp Dec., Ex. 1, ¶ 21; Sexton Dec. [ECF 6-1], Ex. 1, ¶ 8.

Public figures come in two varieties—general purpose and limited purpose. A general-purpose public figure is one who achieves "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A general public figure's fame or notoriety is

Page 3 of 14
{00685805:4}

OBJECTION TO FINDINGS AND
RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

limited to the "community". *Id.* at 352. A limited-purpose public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351. A general public figure is a public figure for all issues in a specific community, and a limited purpose public figure is a public figure for the purposes of specific issues. The distinction is defined by a specific community or specific issues.

*Gertz* is the authoritative Supreme Court case on the public figure analysis, a necessary prerequisite to determine if malice must be proven by a plaintiff in a defamation case. But the facts of *Gertz*—where the plaintiff was found to *not* be a public figure—are a poor comparison to this case. In *Gertz,* a private attorney represented the victim's family in a civil case against the Chicago police officer who murdered their loved one. *Id.* at 323. The far-right John Brich Society labeled the attorney as a communist sympathizer in its magazine, and the attorney sued for defamation. *Id.* Gertz did not voluntarily enter into the public sphere, nor did he participate in public debate. He was a private attorney representing a client in a newsworthy event, who was dragged into the public eye by a conspiratorial magazine

In this case, we have an undisputed multiple-time political candidate and active community participant, both voluntary actions by Tallman which give him an elevated voice in the community. There is online discussion about Tallman's fitness for political office and ongoing community discussion about his fitness for political office after his candidacy. Despite this, the F&R summarily found that

> "Tallman does not possess the "pervasive" public characteristics needed to qualify as a general-purpose public figure. He also does not qualify as a limited-purpose public figure because there is no nexus between the subject matter of the defamatory statement and the purpose for which Tallman is a public figure"

F&R [ECF 27], p. 8.

Page 4 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

There is ample contrary evidence in the record. The following record evidence establishes that Tallman does in fact possess the "pervasive" public characteristics needed to qualify as a general purpose public figure in his community:

| Evidence | Source | Relevance |
|---|---|---|
| "I ran for mayor in 2020." | Tallman Dec. [ECF 11-1], ¶ 4. | Tallman volunteered to be a public figure as early as 2020. |
| "I also ran in the special election for the Port of Morrow Board of Commissioners in 2021." | *Id*. at ¶ 5. | Tallman remained in the public eye in a second political campaign. |
| "I ran for City Council in 2022." | *Id*. at ¶ 6. | Tallman's public intention to become a public official continued through a third election cycle. |
| "I own . . . a coffee shop in Boardman[.]" | *Id*. at ¶ 7; Ripp Dec., Ex. 1, ¶ 5 and Ex. 2, ¶ 4. | In a town of 4,000 people where "everyone knows each other," a reasonable juror would determine that Tallman is known for the distinct purpose of being a local business owner. Complaint [ECF 1-1], ¶ 4. |
| Tallman "volunteered" to coach for the Columbia Youth Soccer Club. | *Id*. at ¶ 36. | In light of the other evidence described herein, it is clear that Tallman was further distinctly known in the small Boardman community as a youth soccer coach. |
| In 2021, the East Oregonian newspaper published that Tallman is known in the community for being "at odds with the Port of Morrow Commission and . . . [the] Umatilla Electric Cooperative." Tallman provided the newspaper with comment for the article, stating that he wants to "be part of the conversation." | Ripp Dec., Ex. 3, p. 4. | Tallman's commentary for the article shows that Tallman has voluntarily injected himself into a variety of public concerns tied to his campaigns because he "wants to be part of the conversation." |
| In 2021, KEPR published an article relating to the foregoing public dispute, to which Tallman provided further public comment "say[ing] he . . . is deeply embedded in the community" and that he wants to "continue serving the Boardman community." | *Id*. at p. 8–9. | Tallman's public comments in the article further establish that he continually interjects himself in his community as someone who is "deeply embedded" in it. |
| The Boardman City Council | *Id*. at p. 11–13. | Establishes that Tallman |

Page 5 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

| Evidence | Source | Relevance |
|---|---|---|
| Regular Meeting minutes of May 3, 2022, include public comment led by Tallman complaining about the City's construction projects. | | voluntarily injected himself in many matters of public concern in his community. |
| The Boardman City Council Special Meeting minutes of June 28, 2022, include public comment led by Tallman complaining about the City's response to Tallman's lawsuit against the City on Appeal as AP22-003. | *Id*. at p. 14–17. | Further evidence of Tallman's continual attendance in community meetings on associated issues of public concern. |
| In 2022, the East Oregonian newspaper published an article regarding Tallman's ethics complaint against the chair of the Morrow County Planning Commission. Tallman provided the newspaper with statements for publication. | *Id*. at p. 22–23. | This evidence shows that throughout the time period relevant to the Controversy, Tallman engaged in conversations regarding the reasons for Tallman's pervasive presence in the public eye. |
| In 2022, the New York Post published an article regarding how some Oregon counties wish to become part of Idaho. Tallman was the Morrow County representative chosen to make public comment on this issue for publication in the article, including commentary on what is and is "not for the public good[.]" | *Id*. at p. 29–36. | This evidence shows that Tallman has garnered national attention as a representative of his community in which he feels confident to determine what events are for or against the "public good." |

Interpreted cumulatively, this evidence shows that Tallman should be considered a general purpose public figure required to prove that Miller's statements were made with actual malice. As detailed above, there is "clear evidence of [Tallman's] general fame or notoriety in the community and pervasive involvement in the affairs of society." *Gertz*, 418 US at 352.

Regardless of this substantial evidence of Tallman's extensive public involvement, in defamation actions, courts around the country have concluded that all candidates for public office are considered public figures. "[I]t is abundantly clear that . . . publications concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning

Page 6 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

occupants of public office. That New York Times itself was intended to apply to candidates . . . is readily apparent from that opinion's text and citations to case law." *Monitor Patriot Co. v. Roy*, 401 US 265, 271 (1971).

The Massachusetts Supreme Court reached the same conclusion for a candidate for office in a union election: "[t]he plaintiff voluntarily thrust himself into the controversy by campaigning for reelection to the position of secretary-treasurer of Local 526" and that "[i]n the context of a union election campaign, the plaintiff, as an incumbent, should expect criticism of his record." *Agar v. Judy*, 151 A.3d 456, 479 (Del. Ch. 2017). The Superior Court of New Jersey reached a similar conclusion: "As a candidate for election to the association's board of directors, plaintiff thrust himself into a spotlight which justified viewing him as a public figure for the limited purpose of his candidacy." *Verna v. Links at Valleybrook Neighborhood Ass'n, Inc.,* 371 N.J. Super. 77, 97 (App. Div. 2004).

Even if a political candidate does not prevail in an election, they are still considered to be a public figure: "[c]andidates for public office, who never achieve the status of public official because of lack of success at the polls, nevertheless take on the garb of public officials for the limited purpose of their candidacy." *Id*. This not only includes candidates on the national level, but also candidates for public office on a local level. *Id.* Verna has been upheld in order to protect voters' rights to publicly discuss qualifications of candidates: "Public discussion about the qualifications of those who hold or wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment." *Gulrajaney v. Petricha*, 381 N.J. Super. 241, 257 (App. Div. 2005) (citing Verna at 96). See also *Redmond v. Sun Pub. Co.*, 239 Kan. 30, 35 (1986). ("If we were to adopt Redmond's claim that one day after his unsuccessful bid for public office he was no longer a public figure, such would preclude all comments about unsuccessful candidates after the election was determined.")

Page 7 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

Because Tallman ran for public office and is a general purpose public figure in the community, he is subject to the heightened *New York Times* standard.

### (b) Alternatively, Tallman is a limited purpose public figure.

If the Court determines that it is not appropriate to classify Tallman as a general purpose public figure, Miller urges the Court to find Tallman a limited purpose public figure.

Judge Hallman found that Tallman "does not qualify as a limited-purpose public figure because there is no nexus between the subject matter of the defamatory statement and the purpose for which Tallman is a public figure." F&R [ECF 27], p. 8. This finding is based on the F&R's application of the three-part *Gertz* test which asks courts to analyze "(i) whether a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Id.* at p. 7–8 (citing *Makaeff v. Trump Univ.*, 715 F 3d 254, 266 (9th Cir 2013) (citing *Gertz*, 418 US at 351–52))

The F&R found that the first element of the *Gertz* test was satisfied, but not the second or third elements. *Id.* at 8. This was an error. A closer reading of the evidence presented shows the nexus between Miller's statements and Tallman's status in the community, and that Tallman voluntarily subjected himself—by running for political office multiple times and volunteering for a children's soccer coaching job–to discussions about his qualifications for political office.

Miller's supposedly defamatory Facebook post was made in response to Mr. and Mrs. Nuñez's earlier Facebook posts about Tallman's qualifications as a political candidate. There they posted a redacted version of Miller's police report about Tallman's abhorrent actions towards her and other underage employees. Tallman Dec. [ECF 11-1], ¶¶ 19–20 and Ex. B ("Frankie Nu[ñ]ez Lezamo posted the

Page 8 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

Police Report on Facebook[;]" "Ms. Miller shared Mr. Nu[ñ]ez Lezamo's post to her own Facebook page."); F&R [ECF 27], p. 3; Ripp Dec., Ex. 1, ¶ 21 (excerpting Mrs. Nuñez's post: "Stop blindly following a shameless child molester! His name has been on TWO of our ballots now sick bastard."); Id. at ¶ 8 ("[A]ny reader would understand that Mrs. Nuñez's post referred to Mr. Tallman."). Miller's post was part of the larger conversation, following the Nuñez's posts, about Tallman's qualifications to lead a community and be in a position of trust with children." *Id.* at ¶¶ 21 and 35–36 ("Miller proclaimed her goals were . . . to protect children from me[;]" "[B]ecause of the . . . 'information posted online,' . . . I was precluded from coaching . . . which I had previously volunteered to do[.]"); Ripp Dec., Ex. 1, ¶¶ 23–24 ("Later, after I offered to coach a team . . . Frankie Nu[ñ]ez Lezamo posted on Facebook, 'How many of our local youth sports programs allows convicted felons to coach our children[;]'" "Then, Mr. Nu[ñ]ez Lezamo posted the Police report on Facebook . . . [t]hat same day, he posted on Facebook that, 'Anyone who has slapped a teenagers butt, someone who has tried to touch their breasts, someone who has put ice down a teenagers shirt should definitely not be allowed to coach or be around kids!'").

 Miller's postings were a direct response to the long line of online back-and-forth about Tallman's qualifications as a political candidate and public figure. She need not have referenced his political activities or his public activities to require him to meet the higher *New York Times* standard. It is sufficient that she took part in the ongoing conversation by responding to the Nuñez posts about these topics.

 Regarding the *Gertz* test's third prong, Tallman "voluntarily injected" himself into the controversy by running for political office and engaging in the very public back and forth with Faith Spencer on the Boardman Community Facebook group page. This exchange shows that Tallman voluntarily injected himself and invited public comment on issues relating to the controversy. Ripp Dec., Ex. 2, ¶¶ 6–11.

Page 9 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

**(c) Tallman has failed to produce any evidence showing that Miller's statements were made with actual malice.**

A party must submit admissible evidence to defeat an anti-SLAPP motion. *Young v. Davis*, 259 Or App 497, 508, 314 P3d 350, 357 (2013). If the *New York Times* standard applies to a plaintiff, then malice must be proven. In Oregon, "malice may be established by evidence that a statement was published with knowledge that it was false or with reckless disregard of whether it was false or not or with a high degree of awareness of its probable falsity or when the defendant in fact entertained serious doubts as to the truth of its publication" *McNabb v. Oregonian Pub. Co.*, 69 Or App 136, 140 (1984) (cleaned up).

The F&R seems to have concluded that Tallman was able to meet this standard by presenting his own declaration contradicting Miller's version of events. *See* F&R [ECF 27], p. 15 ("[I]f she is lying, she will have exhibited actual malice."). But merely contradicting testimony is not the same as presenting evidence of knowing falsity, as is required by the *New York Times* standard.

No part of Tallman's declaration speaks to Tallman's knowledge that Miller "did not have a reasonable belief in the truth of her statements." Instead, these 12 statements merely describe Tallman refuting the substance of Miller's allegations (i.e. "I did not make sexual comments . . . I did not put ice down . . . I did not touch Ms. Miller's breasts . . . I did not slap Ms. Miller's buttocks . . . I did not rub Ms. Miller's . . ."). Tallman Dec. [ECF 11-1], ¶¶ 22-34. Not one of these declaratory assertions refer to Miller's mental state at the time the statements were made.

Nor do Tallman's declarative statements constitute the requisite "sufficient evidence to permit an inference that [Miller] must have, in fact subjectively entertained serious doubts as to the truth of [her] statement." *Weingarten*, 102 Cal App 3d at 144 (citing *St. Amant*, 390 US 727, 731; *Alioto*, 519 F 2d at 779; *Montandon*, 45 Cal App at 947; *Phoenix Elec. Co.*, 867 F Supp at 934 (citing *St.*

Page 10 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

*Amant*, 390 US at 731).

Neither do Tallman's testimonial assertions "consist of evidence that the story in question was either (1) fabricated[,] (2) so inherently improbable that only a reckless [person] would have [published it,] or (3) based wholly on . . . some other source that [Miller] had obvious reasons to doubt[.]" *Phoenix Elec. Co.*, 379 US at 934 (citing *St. Amant*, 390 US at 732)).

While Tallman's declaration may be sufficient to create a fact question about what really happened between the two parties, a fact question is not the same as affirmative evidence of malicious intent by Miller, which is what is required by *New York Times*.

**2.    The F&R erred in considering Tallman's judicial admissions in other cases and his judgment in the Faith Spencer case.**

The F&R also incorrectly evaluated Miller's judicial admission and judicial estoppel arguments. The F&R asserted that it was sufficient for Tallman to show damages based on "allegations, rumors and information posted online" as well as "unrest" in the community. F&R [ECF 27], p. 18. The implication is that Miller's post was online, therefore a generic citation to harmful things online is sufficient to show the causal connection between Miller's actions and Tallman's harm.

ORS 31.150 requires Tallman to present evidence on each element of his claim, including that Miller's statements caused the harm that he alleges. In the context of this case, where 5 lawsuits were filed all alleging that the speech of 6 different actors caused the exact same harm, it is insufficient for Tallman to generically point to allegations, rumors and information posted online to connect the harms he suffered to Miller.

The issue here is similar to the issue in *Schwern v. Plunkett*. 845 F3d 124 (9th Cir 2017). There, the "essence of Schwern's suit is that Plunkett made false rape accusations" to specific people, and those people then made online statements

Page 11 of 14
{00685805:4}
OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

that Schwern was a rapist. *Id.* at 1245. "Central to each claim, then, is Schwern's allegation that Plunkett actually communicated with these individuals and organizations following the incident." *Id.*

Like Tallman speculating that Miller's statements caused third parties to stop doing business with him, Schwern only presented a naked belief that Plounkett communicated these statements to third parties. *Id.* ("Schwern "mere[ly] speculat[es]" that she spoke to them. *Id.")* The court was not bound to accept Schwern's version of events because "where there is a conflict between the parties' proffered factual narratives and evidence, we adopt the version most favorable to Schwern only when it is supported by substantial evidence. *Id.* (cleaned up).

In the absence of other damaging material online, it might be enough to generically point to "online statements" as causing Tallman's damages. But that is not the case here. There are five other parties, all alleged to have said harmful things. Tallman can't speculate and prevail. He needs to come forth with *some* evidence that Miller's statements caused him harm, and he has not done that.

 Similarly, the F&R waived away Miller's judicial estoppel argument without serious engagement by simply declaring that the allegations in Tallman's companion cases "are not so inconsistent as to trigger judicial estoppel," when viewed in the light most favorable to Tallman. F&R [ECF 27], p. 19. But where there is a conflict between the parties' proffered factual narratives and evidence, the court can only adopt the version most favorable to the non-movant when it is supported by substantial evidence. S*chwern v. Plunkett.* 845 F3d 1241, 1245 (9th Cir 2017).

In the Ninth Circuit, a party is estopped from making an argument when 1) its current position is "clearly inconsistent" with its previous position; 2) "the party has succeeded in persuading a court to accept that party's earlier position"; and 3) the party, if not estopped, "would derive an unfair advantage or impose an unfair

Page 12 of 14
{00685805:4}
OBJECTION TO FINDINGS AND RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

detriment on the opposing party." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F3d 778, 783 (9th Cir 2001).

A party's current position is clearly inconsistent with its previous position if the current position "contradict[s]" the previous position. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012). *See e.g. Bistro Executive, Inc. v. Rewards Network, Inc.*, CV 04-4640 CBM MCX, 2006 WL 6849825, at *5 (CD Cal July 19, 2006) (where different cases are based on contracts with "similar, if not identical, language" the position in one case that the contracts were "loans" directly contradicts the position in the latter case that they are "purchases."). The language used in the Spencer and Miller complaints is *exactly* the same, with Spencer at fault in one and Miller at fault in the other, making them necessarily contradicting.

Tallman has already succeeded in persuading a court to accept that his earlier position is correct. He obtained a final judgment against Spencer. *Compare* Complaint [ECF 1-1] *with* Sexton Dec. [ECF 6-1], Ex. 2 (Tallman's complaint against Spencer); Sexton Supp Dec. [ECF 13-1], Ex. 1 (the order of default entered against Spencer); Judgment [ECF 26-1].

Finally, a party derives an unfair advantage from taking two contradictory positions if invoking the new position creates the "possibility of [the party] prevailing on the very position it successfully discredited." *Spectrum Worldwide*, 555 F.3d at 779–80. Tallman derives an unfair advantage because he could obtain a double recovery: it has been judicially established that Spencer caused the harm that Tallman now claims to have been caused by Miller.

### 3. Miller's statements are protected by a qualified privilege and the Court should make its own determination on review.

Judge Hallman declined to issue a finding on Miller's argument that her statements are protected by a qualified privilege. F&R [ECF 27], p. 13. This decision was based on Judge Hallman finding that "Tallman has presented

Page 13 of 14
{00685805:4}

OBJECTION TO FINDINGS AND
RECOMMENDATION

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

substantial evidence that Miller knew that she was making false statements" sufficient to disregard Miller's qualified privilege arguments as redundant. *Id*. As discussed above, Tallman's declaration presents conflicting evidence, not evidence of malice. Therefore, Judge Hallman's findings on the issue rely exclusively on the Complaint's allegations. These "[c]onclusory allegations are not evidence and cannot by themselves create genuine issues of material fact where none would otherwise exist." *Maier v. Lovick*, 2010 WL 1849032, 4 (W D Wa 2010) (citing *Project Release v. Prevost*, 722 F 2d 960, 969 (2nd Cir 1983), *accord Leer v. Murphy*, 844 F2d 628, 633 (9th Cir 1988)). Judge Hallman impermissibly factored in these allegations which "are not evidence that the Court may consider in its [FRCP 56] analysis." *Moalem v. International SPA Association*, 2020 WL 5805495, fn 1 (citing *United States v. Zermeno*, 66 F3d 1058, 1062 (9th Cir 1995); *S. Pac. Co. v. Conway*, 115 F2d 746, 750 (9th Cir 1940)).

The Court should evaluate Miller's arguments on the subject of qualified privilege anew following the application of the proper evidentiary standard.

## CONCLUSION

Miller has met her burden and Tallman has not; therefore, the Motion should be granted.

Dated October 1, 2024

**Elevate Law Group**

*[signature]*

Troy G. Sexton, OSB No. 115184
troy@elevatelawpdx.com
Ryan H. Ripp, OSB No. 204332
ryan@elevatelawpdx.com
*Counsel for Defendant Michaela Miller*

Trial Attorney: Troy G. Sexton

Page 14 of 14
{00685805:4}

OBJECTION TO FINDINGS AND RECOMMENDATION

**Elevate Law Group**
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **OBJECTION TO FINDINGS AND RECOMMENDATION** on the attorney or party listed below on the date set forth below by the method(s) indicated:

**Buchalter, A Professional Corporation**
Attn.: Daniel P. Larsen, OSB No. 943645
805 SW Broadway, Suite 1500
Portland, OR 97205

**Buchalter, A Professional Corporation**
Attn.: Josh H. Escovedo, California Bar No. 284506, and
Christina M. Morgan, California Bar No. 277877
500 Capitol Mall, Suite 1900
Sacramento, CA 95814

☐ First-class mail, postage prepaid
☐ Facsimile, pursuant to ORCP 9 F
☐ Hand-delivery
☐ Overnight courier, delivery prepaid
☐ E-mail, pursuant to ORCP 9 G
☐ E-mail copy, as a courtesy only
☒ CM/ECF system, pursuant to UTCR 21.100.
☐ Other

Dated October 1, 2024       **Elevate Law Group**

Troy G. Sexton, OSB No. 115184
troy@elevatelawpdx.com
Ryan H. Ripp, OSB No. 204332
ryan@elevatelawpdx.com
*Counsel for Defendant Michaela Miller*

Trial Attorney: Troy G. Sexton

Page 1 of 1    CERTIFICATE OF SERVICE
{00685805:4}

Elevate Law Group
6000 Meadows Road Suite 450
Lake Oswego, OR 97035
P: 503-417-0500 | F: 503-417-0501